[No. A020625. First Dist., Div. Two. Jan. 9, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL FREDERICK RAMIREZ et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for partial publication. The parts to be published follow.

604

COUNSEL

Manuel E. Nestle and Mark D. Greenberg, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Eugene W. Kaster, Dane R. Gillette and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLINE, P. J.**—Appellants Michael Frederick Ramirez and Martin Gomez appeal from convictions for three counts of forcible rape in concert (Pen. Code, §§ 261, subd. (2) and 264.1)[1] (counts 1, 2 and 11); two counts of attempted murder (§§ 664/187) (counts 3 and 4); two counts of penetration by foreign object in concert (§§ 289, subd. (a) and 264.1) (counts 5 and 6); one count of attempted robbery (§§ 211, 664) (count 7); one count of robbery (§ 211) (count 8); two counts of sodomy in concert (§ 286, subd. (d)) (counts 9 and 10); one count of oral copulation in concert (§ 288a, subd. (d)) (count 12); and two counts of conspiracy to commit first degree murder (§§ 182/187) (counts 13 and 14). They raise several arguments concerning sufficiency of the evidence for, and sentencing on, the conspiracy convictions; and a variety of contentions relating to enhancements and sentencing on the other counts.

## STATEMENT OF FACTS

In February 1982, Carol O. and Vivian C. were living in a small studio apartment at 142 East Santa Clara Street in San Jose. The apartment consisted of one room, with a separate kitchen and bathroom, and contained one queen-sized bed which the two women shared.

Carol and Vivian met appellant Gomez while riding a bus on February 9, 1982. Gomez sat next to Carol, began a conversation, and was then intro-

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

duced to Vivian. Carol and Gomez spent that day and night together, mostly at her apartment. Vivian was home part of the evening; Gomez and Carol remained in the kitchen drinking beer. Gomez and Carol had consensual sex that night, while Vivian slept in the same bed, and again in the morning after Vivian left.

Gomez and Carol spent that next day together. Gomez was present when Carol put the food stamps she had just picked up from the welfare office in a box on her dresser. He spent that night, but by the next day Carol no longer wished to see him and he eventually left. Carol later discovered that her food stamps were missing. At some point during their time together, Gomez had given Carol a buck knife, saying he did not want it because it gets him in trouble. She had told him that she was three months pregnant.

On the evening of February 15, 1982, Carol and Vivian were at home watching television. Gomez appeared with appellant Ramirez, whom the women had not seen before, and the men were invited in. Gomez asked Carol for money to go to the liquor store; she said she had none. He also asked for the knife he had given her; she refused; he pulled on her purse to take the knife, saying he was going to make some money; and she finally let him take the knife.

Appellants left and returned about 10 minutes later. Each had a quart of beer, Gomez had an umbrella, and Ramirez had a bag of marijuana. Gomez said that he had "stabbed a nigger at the liquor store" and taken his weed. He said appellants would have to spend the night because the "pigs" would be looking for them.[2] The four smoked the marijuana and drank beer and were having a relatively pleasant time. When Gomez reiterated his desire to spend the night, Carol told him there was nowhere for him to stay. Vivian also told Gomez he could not spend the night.

At this point, appellants went into the bathroom together and closed the door. They came out after a few minutes and Gomez told Carol he wanted to talk to her in the bathroom. In the bathroom, Carol began brushing her hair, then turned to find Gomez pointing the knife at her; he said nothing and did not touch her. Carol told him to leave or he would be sorry, and she left the bathroom with Gomez following.

Leaving the bathroom, Carol saw Ramirez on top of Vivian on the bed, his hand over her mouth. Gomez put his hand over Carol's mouth, placed his knife at her throat, and forced her to the floor. He told her to be quiet,

---

[2]San Jose Police Officer Sencio testified that he spoke with a Black man about 10 p.m. on February 15, 1982, and, as a result, put out an all points bulletin for two Mexican males in the area of 4th and Santa Clara.

threatening that he had just stabbed a man and nothing would stop him from slitting her throat. Gomez sat on a chair, occasionally poking her with the knife. Ramirez came over and tied Carol's hands behind her back, pulled up her blouse and cut off her bra, shoved something in her mouth, and then tied her bra around her mouth.[3] Gomez had Carol lie on the floor near the bed, threatening to kick her in the stomach or cut off her breast or cut out an eye. She could see Vivian being tied to the bed. Ramirez had approached Vivian when he came out of the bathroom; he pushed her down on the bed and, when she resisted, onto the floor. Brandishing a knife from the womens' kitchen, he told her to shut up, stuffed a glove in her mouth, and cut off her bra and tied it around her head. He then put her back on the bed and tied her arms and legs to the head and footboards with electrical cords. Vivian cried out; Gomez told Ramirez to "beat the shit out of" her and Ramirez hit her in the face.

Ramirez cut off Carol's pants and underpants and had vaginal intercourse with her. He then made her stand up and bend over, and had anal intercourse with her. Gomez was two or three feet away.

Gomez cut off Vivian's pants and underpants with a knife and had vaginal intercourse with her. He then sat on her chest and put his penis in her mouth. Ramirez then got on top of Vivian and had vaginal intercourse with her, after which Gomez cut the cords off her legs and held up her legs while Ramirez had anal intercourse with her.

After Vivian had cried out, Gomez made Carol lean against the wall in a sitting position, put the butt of his knife to his stomach and the blade against her stomach, and told Vivian, "all she has to do is move an I'll cut the baby out of her stomach." Gomez then forced Carol onto the bed with Vivian. Ramirez brought two eggs from the kitchen. Gomez forced Carol to spread her legs by sticking the knife in her throat, and put an egg in her vagina. He tried to break the egg by poking it with his knife, then took the egg out, broke it, and reinserted it into her vagina. He then did the same to Vivian with the other egg.

At some point, Vivian saw Gomez walking around the apartment and pulling clothing out of drawers. He took the rings off her fingers. Ramirez went through drawers and the closet, took Vivian 's purse into the kitchen, and told Gomez that he found only $2.

Ramirez put a pillow over Vivian's head. He and Gomez got on top of her and one stabbed her in the neck and chest. She believed the stabber was

---

[3]Vivian testified that Gomez tied up Carol.

Gomez because his voice was closer. Gomez then turned Carol on her back, someone said "Let's do her" and a pillow was placed over her head. Carol was stabbed in the neck and chest; she pleaded not to be killed, was stabbed again in the neck and then tried to play dead. She, too, heard Gomez's voice closer. Gomez said "She won't stop breathing;" Ramirez replied "Just wait, she will; just wait a minute, she will" and Gomez said "Bye, bye, baby." At some point, before the stabbing, appellants had asked if the women were going to go to the police; they said no and appellants said they would not kill them. After the stabbing, Carol looked up and saw Gomez but not Ramirez. She ran screaming to the manager's apartment where the police were called.

Vivian testified that appellants had discussed avoiding leaving fingerprints in the apartment and that Gomez spread liquid soap around the apartment and wiped the women with a rag. The police found laundry powder on the bathroom floor and liquid soap in the apartment. A trail of soap led down the hallway to a broken window leading to a fire escape by which were found a bottle of soap and a knife.

Carol spent about four days in the hospital, having suffered superficial lacerations. Vivian spent five days in the hospital, three of which were in the intensive care unit. She had indications of a punctured lung.

Neither appellant testified at trial. The jury convicted on all counts[4] and found true allegations of acting in concert on the sex offense counts (§§ 264.1, 286, subd. (d), 288a, subd. (d)); of deadly weapon use (§§ 12022.3, subd. (a) and 12022, subd. (b)) on all counts charged;[5] and of infliction of great bodily injury (§§ 12022.7, 12022.8) on counts involving Vivian, but not on those involving Carol.[6]

Appellants were each sentenced to an indeterminate term of 25 years to life for each count of conspiracy. Gomez was additionally sentenced to a determinate term of 60 years, for a total of 110 years to life; and Ramirez

---

[4]Count 7 was reduced to attempted robbery on the prosecutor's motion prior to the case going to the jury.

[5]Weapon use enhancements were alleged on all but the conspiracy counts. The rape, penetration by foreign object, sodomy and oral copulation counts charged both appellants under section 12022.3, subdivision (a); the attempted murder and robbery counts charged Gomez alone under section 12022, subdivision (b).

[6]The information alleged infliction of great bodily injury under section 12022.8 on the rape, penetration, sodomy and oral copulation counts, and under section 12022.7 and 1203.075 on the attempted murder and robbery counts, by both defendants on counts 1, 2, 5, 6, 9, 10, 11 and 12, and by Gomez alone on counts 4 and 7. The court had stricken great bodily injury allegations against Ramirez on both counts of robbery and attempted murder, and those against Gomez on the robbery and attempted murder counts involving Vivian.

to a determinate term of 66 years, for a total of 116 years to life. Details of sentencing will be described as relevant in discussion of appellants' various contentions of sentencing error.

## DISCUSSION

### I.,

### Conspiracy Convictions

A.*

. . . . . . . . . . . . . . . .

### B. Jury Unanimity

Appellants next argue that the conspiracy convictions must be reversed because the jury was not instructed that it was required to unanimously agree upon which overt act was committed in furtherance of the conspiracy. The argument is made by analogy to cases requiring an instruction directing jury unanimity on the particular act underlying a conviction where evidence in the case shows more than one act upon which the conviction could be based. (E.g., *People* v. *Moore* (1983) 143 Cal.App.3d 1059 [192 Cal.Rptr. 374]; *People* v. *Crawford* (1982) 131 Cal.App.3d 591 [192 Cal.Rptr. 374].) Because commission of an overt act is an essential element of conspiracy (*Feagles* v. *Superior Court* [1970] 11 Cal.App.3d 735, 739), appellants urge that unanimity must similarly be assured here. (See *People* v. *Bratis* (1977) 73 Cal.App.3d 751, 763 [141 Cal.Rptr. 45], quoting *People* v. *Rehman* (1967) 253 Cal.App.2d 119, 157-158 [61 Cal.Rptr. 65] [indicating need for unanimity on overt act].)

The jury in this case was instructed in the language of CALJIC No. 6.10 that proof of a conspiracy requires proof of at least one of the alleged overt acts in furtherance of the accomplishment of the object of the conspiracy.[10]

---

*See footnote, *ante,* page 603.

[10]The instruction given was as follows: "A conspiracy is an agreement between two or more persons with the specific intent to agree to commit the public offense of, and in this case it is murder—alleged to be murder—that is to say, and with the further specific intent to commit such offense, followed by an overt act committed in this State by one or more of the parties, for the purposes of accomplishing the object of the agreement. Conspiracy is a crime. [¶] In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one of the overt acts alleged in the information. [¶] It is not necessary to the guilt of any particular defendant that he, himself, committed the overt act, if he was one of the conspirators when such an act was

It was also instructed, according to CALJIC No. 17.50, that "[i]n order to reach a verdict, all 12 jurors must agree to a decision and to any findings that you have been instructed to put into your verdict." Appellants contend these instructions left room for jurors to convict although disagreeing which overt act was committed in furtherance of the conspiracy, and that an instruction like CALJIC No. 17.01,[11] specifically directing unanimity on the overt act element, should have been given sua sponte.[12]

The argument that the combination of CALJIC Nos. 6.10 and 17.50 does not adequately assure jury unanimity on the overt act underlying a conspiracy conviction was rejected in *People* v. *Skelton* (1980) 109 Cal.App.3d 691, 715-717 [167 Cal.Rptr. 636], certiorari denied 450 U.S. 917 [67 L.Ed.2d 343, 101 S.Ct. 1361]. *Skelton,* following *United States* v. *Armone* (2d Cir. 1966) 363 F.2d 385, 398, certiorari denied 385 U.S. 957 [17 L.Ed.2d 303, 87 S.Ct. 392], determined that the jury would understand its instructions as directed to the jury as a body and not as allowing fragmentation of findings on elements of the offense. (109 Cal.App.3d at pp. 716-717.) Given this, the court rejected as " 'strained conjecture' " the argument that the specific instruction requiring proof of commission of an overt act, along with that requiring a unanimous verdict, was inadequate. (*Id.,* at p. 717.)

Neither *Skelton* nor *Armone* address the line of cases holding that an instruction like 17.01 is required when disagreement among jurors as to the act underlying a conviction is possible. (E.g., *People* v. *Crawford, supra,* 131 Cal.App.3d 591; *People* v. *Deletto* (1983) 147 Cal.App.3d 458, 471-472, cert. den. 466 U.S. 952 [80 L.Ed.2d 542, 104 S.Ct. 2156]; *People* v. *Diedrich* (1982) 31 Cal.3d 263, 280-281 [182 Cal.Rptr. 354, 643 P.2d 971].) These cases refuse to assume that the jury will infer the specific unanimity requirement from other instructions. (See *People* v. *Moore, supra,* 143 Cal.App.3d

---

committed. The term, "overt act," means any step taken or act committed by means of the conspirators, which goes beyond mere planning, or agreement to commit a public offense at which a step or act is done in furtherance . . . of the accomplishment of the object of the conspiracy. [¶] To be an overt act, the step taken, or act committed, need not, in and of itself, constitute the crime, or even an attempt to commit the crime which is the ultimate object of the conspiracy; nor is it required that such step or act, in and of itself, be it criminal or unlawful act . . . ."

[11]CALJIC No. 17.01 provides: "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[12]Appellants did not request such an instruction. They rely, however, on cases holding that where the evidence shows more than one act upon which a guilty verdict could be based, an instruction requiring unanimity on the act committed must be given. (*People* v. *Madden* (1981) 116 Cal.App.3d 212, 219 [171 Cal.Rptr. 897]; *People* v. *Crawford, supra,* 131 Cal.App.3d 591, 596; *People* v. *Moore, supra,* 143 Cal.App.3d 1059, 1064.)

1059, 1066; *People* v. *Crawford, supra,* 131 Cal.App.3d 591, 595-596.) Rather, while recognizing that the jurors *might* have unanimously agreed on the act in question, these cases note that "such agreement would necessarily be fortuitous absent a proper instruction." (*People* v. *Moore, supra,* at p. 1066; *People* v. *Crawford, supra,* at p. 598.)

Since it is not apparent why jurors would be any more likely to infer the unanimity requirement in the context of overt acts underlying a conspiracy conviction, we are not prepared to agree with *Skelton* that other instructions adequately covered the issue here. The absence of an instruction like 17.01, however, does not undermine the verdict in every case. Where there is no possibility of jurors' disagreement, the specific instruction may not be required (*People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791 [190 Cal.Rptr. 554] [conviction for rape; two acts in evidence, but within minutes of each other and with nothing to allow the jury to accept the defense of consent as to only one]), or, at least, its absence will be deemed harmless error. (*People* v. *Deletto, supra,* 147 Cal.App.3d 458, 468 [conviction for oral copulation; no basis in evidence to distinguish between two acts]; *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3] [oral copulation; two acts within minutes; defense must have been rejected as to both].)

"[T]he possibility of disagreement exists where the defendant is accused of a number of unrelated incidents, such as alleged rapes at different times or places, leaving the jurors free to believe different parts of the testimony and yet convict the defendant. (*People* v. *Castro,* [1901] 133 Cal. [11] at pp. 12-13 [65 P. 13] [defendant charged with one act of unlawful sexual intercourse, but victim testified to four separate acts over a period of several months]; *People* v. *Williams,* [1901] 133 Cal. [165] at p. 168 [65 P. 323] [defendant charged with one act of rape of a minor, but victim testified to hundreds of separate occurrences at indefinite times and places]; *People* v. *Alva* (1979) 90 Cal.App.3d 418, 425-426 ... [defendant charged with three acts of unlawful sexual intercourse, but victim testified to acts once every week or two, for six months].) Disagreement may also exist where the defendant offers a defense which could be accepted or rejected as to some but not all of the acts." (*People* v. *Gonzalez, supra,* 141 Cal.App.3d at pp. 791-792, fn. omitted.) On the other hand, where the jury could only accept or reject a defense in toto, the unanimity instruction is unnecessary. (*Id.,* at p. 792.)

In the present case, as in *Deletto, McIntyre,* or *Gonzalez,* the evidence supporting each act was the same—the victim's testimony—so that there was no basis for the jury to conclude that some but not all of the acts took place. Appellants contend, however, that even if there was no dispute whether the overt acts occurred, the jury could have differed on whether they could be characterized as acts in furtherance of the conspiracy. Noting that juries not

only find facts but also apply the law to these facts (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 730 [224 Cal.Rptr. 719, 715 P.2d 680]), appellants rely on *People* v. *Espinoza* (1983) 140 Cal.App.3d 564 [189 Cal.Rptr. 543], which found prejudicial error in a failure to give CALJIC No. 17.01 in the context of a conviction for assault with a deadly weapon. In *Espinoza,* the prosecutor had argued that appellant could be convicted on the assault charge either because of appellant's use of a knife or because of his companion's use of a rifle. The court assumed that the jury had concluded that the weapons had been used as described by witnesses, and stated "It does not follow from this premise that all jurors would 'inexorably believe' that both the use of the knife *and* the use of the gun constituted felonious assaults for which appellant was liable.... [¶] Otherwise stated, while we can confidently conclude that all jurors agreed on the acts which were *committed,* we can only guess as to how the acts were *characterized* when the jurors applied the law to the facts. ... In the instant case, the physical acts involving the knife were not identical to those with the gun and we simply cannot conclude the jurors necessarily classified them the same." (*Id.,* at p. 569, italics in original, fn. omitted.)

We do not find the same problem in the present case. In *Espinoza,* the conviction depended on the jury's findings that the facts described made out all the elements of felonious assault, that is, "an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another" (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372]; CALJIC No. 9.00), committed by use of a deadly weapon. (CALJIC No. 9.03.) The several elements of the crime offer several places for jurors to disagree whether a given act constitutes felonious assault. When the facts surrounding the acts alleged to make out the assault differ, therefore, it cannot be assured that each juror characterized each act the same way.

Here, however, the jurors had only to determine whether the acts committed were in furtherance of the conspiracy to commit murder. The facts surrounding each alleged overt act were similar in the sense that each was an act of force or threat preparatory to or facilitating commission of the sex offenses which set the conspiracy in motion. Although the acts themselves were not identical, they played equivalent roles in the series of offenses; none was more or less directly aimed at the attempted murder. The jury could have viewed the alleged overt acts either as directed solely at the sex offenses, and therefore not bases for a conviction of conspiracy to murder, or as directed at a conspiracy to commit the range of offenses, including the sexual assaults and attempted murder. But on these facts, it is so implausible as to be virtually inconceivable that a juror who believed any one of the acts was in furtherance of the conspiracy would not have so viewed the others.

Since there was no realistic possibility of disagreement among the jurors

as to the fact or characterization of the alleged overt acts, any error in failure to give a specific unanimity instruction was harmless. (Cf. *People* v. *Deletto, supra,* 147 Cal.App.3d 458, 468; *People* v. *McIntyre, supra,* 115 Cal.App.3d 899, 911.)[13]

C.*

. . . . . . . . . . . . . . . . . .

D. *Multiple Punishment*

 Appellants are correct that they were erroneously punished for both the conspiracy and the substantive offenses which were its object. Because of the prohibition against multiple punishment in section 654,[20] a defendant may not be sentenced "for conspiracy to commit several crimes and for each of those crimes where the conspiracy had no objective apart from those crimes. If, however, a conspiracy had an objective apart from an offense for which the defendant is punished, he may properly be sentenced for the conspiracy as well as for that offense." (*In re Cruz* (1966) 64 Cal.2d 178, 180-181 [49 Cal.Rptr. 289, 410 P.2d 825]; *In re Romano* (1966) 64 Cal.2d 826, 828-829 [51 Cal.Rptr. 910, 415 P.2d 798]; *People* v. *Keller* (1963) 212 Cal.App.2d 210, 220-221 [27 Cal.Rptr. 805]; *People* v. *Scott* (1964) 224 Cal.App.2d 146, 152 [36 Cal.Rptr. 402].) Thus, punishment for both conspiracy and the underlying substantive offense has been held impermissible when the conspiracy contemplated only the act performed in the substantive offense (*In re Cruz, supra,* 64 Cal.2d 178, 181 [no objective of conspiracy to commit grand theft other than grand thefts convicted of]; *People* v. *Keller, supra,* 212 Cal.App.2d 210, 220 [conspiracy to commit burglary; attempted burglary]), or when the substantive offenses are the means by which the conspiracy is carried out (*People* v. *Cavanaugh* (1983) 147 Cal.App.3d 1178, 1182 [195 Cal.Rptr. 787] [conspiracy to cheat and defraud; substantive offenses of forgery].) Punishment for both conspiracy and substantive offenses has been upheld when the conspiracy has broader

---

[13]*McIntyre* held the 17.01 error harmless on the standard of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. *Deletto* and subsequent cases have determined, however, that the standard which must be used is that enunciated in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], whether the error was harmless beyond a reasonable doubt (e.g., *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 855 [212 Cal.Rptr. 174] [distinct acts, at different times; error not harmless]; *People* v. *Metheney* (1984) 154 Cal.App.3d 555 [201 Cal.Rptr. 281] [distinct acts at different times; error not harmless].)

*See footnote, *ante,* page 603.

[20]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

or different objectives from the specific substantive offenses. (*People* v. *Scott, supra,* 224 Cal.App.2d 146 [conspiracy covering several months; evidence of numerous incidents other than those comprising the substantive offenses]; *People* v. *Collins* (1966) 242 Cal.App.2d 626 [51 Cal.Rptr. 604] [conspiracy alleged and proved went beyond instances of theft for which appellant convicted]; *People* v. *Amadio* (1971) 22 Cal.App.3d 7, 15 [98 Cal.Rptr. 909] [conspiracy to receive stolen property included more than receipt of property in substantive counts]; *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 819 [179 Cal.Rptr. 726] [conspiracy to murder A and B; substantive offense of murdering C].)

■ In this case, appellants were sentenced for conspiracy to commit murder and for substantive offenses of robbery, sex offenses, and attempted murder. Sentence on the attempted murder counts was stayed because of their similarity to the conspiracy counts, under section 654. Respondent contends that this stay obviated any problem of double punishment with respect to the attempted murder/conspiracy to murder, and that sentencing for the conspiracy and the other substantive offenses was proper because the conspiracy had multiple objectives.

Respondent's argument is based on language in *People* v. *Scott, supra,* 224 Cal.App.2d at p. 152, that double punishment occurs when a *single* transaction is the object of the conspiracy. *Scott* drew a distinction between the situation where a conspiracy contemplates *only* the substantive offense for which the defendant was punished, and that where an ongoing conspiracy involves various acts of which the substantive offense is but one. (*Id.,* at p. 152.) The court stated that "[t]he 'one objective' test which, according to *Keller* [212 Cal.App.2d 210], involves double punishment, by definition cannot apply where, as in the instant case, there are multiple objectives or transactions. Logic suggests a contrary result, for to give effect to this argument would allow persons who conspired to commit 10 different robberies to escape punishment for the conspiracy upon being tried for one of the robberies. The rationale of the *Keller* case is to prohibit double punishment where, to continue the analogy, the objective of the conspiracy was to commit only one robbery and there was a trial for that particular offense." (*Ibid.*)

*Scott* does not limit the application of the prohibition against double punishment to situations in which a conspiracy contemplates only a single transaction; it simply explains that no double punishment occurs when one is punished for a conspiracy which encompasses a number of acts, only some of which are punished independently as substantive offenses. Double punishment occurs when a conspiracy has multiple objects and *all* are punished as substantive offenses, just as when the conspiracy has but one object which is punished as a substantive offense. (*In re Cruz, supra,* 64 Cal.2d 178, 180-

181.) On the other hand, there is no double punishment in sentencing for a conspiracy and a substantive offense which is *not* an object of the conspiracy. (*People* v. *Moringlane, supra,* 127 Cal.App.3d 811, 819.)

In the present case, had murder been the sole object of the conspiracy it would be impermissible to punish both the conspiracy and the substantive offense of attempted murder, but permissible to punish the sex offenses and robberies which were not objects of the conspiracy. Since the evidence necessarily shows an agreement to commit sex offenses as well as murder, however, punishment for both the sex offenses and the conspiracy violated the prohibition of section 654 just as would punishment for both conspiracy and attempted murder[21]—despite the fact that only conspiracy to commit murder was charged. Thus the case must be remanded to allow the trial court to choose whether to stay sentence on the conspiracy or on the sex offenses. (*People* v. *Cavanaugh, supra,* 147 Cal.App.3d 1178, 1183.) The stay of sentence on the attempted murder counts must, of course, remain.

█ Punishment on the robbery counts presents a somewhat different issue, as the facts do not similarly compel a conclusion that these offenses were an object of the conspiracy. The robberies occurred after the sex offenses were well under way, were minor in comparison to the other offenses, and were not as likely a subject of agreement between the appellants.[22] Although the trial court could reasonably have relied upon these factors to conclude that the robberies were spontaneous acts, separate from the conspiracy and therefore independently punishable, the record does not indicate whether in fact it did so. Upon remand appellants are entitled to have the trial court make the appropriate finding as to their intent and overall objective. (*People* v. *Rogers* (1981) 124 Cal.App.3d 1071, 1081 [177 Cal.Rptr. 747].)

E. F.*

. . . . . . . . . . . . . . . . . .

[21]The trial court stayed sentence on the attempted murder counts because of their "similarity" to the conspiracy counts and "for the reasons set forth in Penal Code section 654." Because the conspiracy counts were framed to charge only conspiracy to murder, the section 654 issue was not directly presented as to the sex offenses. Presumably, the trial court viewed the sex offenses as separate from the conspiracy and so amenable to independent punishment.

[22]This does not affect the result reached as to the sex offenses: whether or not the robberies were part of the conspiracy, there is clearly no evidence of a conspiracy with objectives *beyond* the offenses committed which would allow punishment on all counts. (*In re Cruz, supra,* 64 Cal.2d at pp. 180-181.)

*See footnote, *ante,* page 603.

## II.

### *Penal Code Section 264.1*

In counts 1, 2 and 11 of the information, appellants were charged with violation of section 261, subdivision (2), rape, with special allegations under section 264.1 that appellants voluntarily acted in concert with each other in the commission of the offense. The verdict forms for these counts required a finding whether each appellant was guilty or not guilty of violating section 261, subdivision (2) and a further finding whether each appellant did or did not act in concert with another person in commission of the rape.[28] Appellant Gomez contends that this verdict procedure infringes on the constitutional right to a jury trial by requiring the jury to render a special rather than a general verdict, that is, by having the jury make the factual finding of acting in concert from which the *court* draws the legal conclusion of guilt of rape in concert under section 264.1[29]

A general verdict is that by which the jury "find either for the plaintiff or for the defendant in general terms" (Black's Law Dict., 5th ed. 1979); in criminal trials it is a verdict of " 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the accusatory pleading" (§ 1151). A special verdict is one "by which the jury find the facts only, leaving the judgment to the Court. It must present conclusions of fact as established by the evidence, and not the evidence to prove them, and these conclusions of fact must be so presented as that nothing remains to the Court but to draw conclusions of law upon them." (§ 1152.) A special verdict is permissible in a criminal trial only when the jury is "in doubt as to the legal effect of the facts proved" (§ 1150), at the jury's prerogative. (*People* v. *Keltie* (1983) 148 Cal.App.3d 773, 785 [196 Cal.Rptr. 243]; *People* v. *Perry* (1972) 7 Cal.3d 756, 784 [103 Cal.Rptr. 161, 499 P.2d 129].)

---

[28]The verdicts for counts 5 and 6, concerning violation of section 289, penetration by foreign object, similarly required first a finding as to guilt on the violation of section 289 and then a finding whether the defendants acted in concert in committing the offense. The information, however, did not contain in concert allegations on these counts. The problem presented by this variance will be discussed in section III of this opinion, *post*.

[29]We note, as a preliminary matter, that appellant is not precluded from raising this issue by his failure to object at trial. While objections to the form of a verdict are generally waived if not raised at trial (*People* v. *Lewis* (1983) 147 Cal.App.3d 1135, 1142 [195 Cal.Rptr. 728]; *People* v. *Nichols* (1967) 255 Cal.App.2d 217, 224 [62 Cal.Rptr. 854]; *People* v. *Gonzales* (1960) 187 Cal.App.2d 769, 772 [10 Cal.Rptr. 12]), appellant here raises a question as to the constitutionality of the verdict procedure. Constitutional issues may be raised for the first time on appeal (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *In re Mazoros* (1977) 76 Cal.App.3d 50, 54 [142 Cal.Rptr. 609]; *People* v. *Allen* (1974) 41 Cal.App.3d 196, 201 fn. 1 [115 Cal.Rptr. 839]), especially when enforcement of a penal statute is involved. (*Hale* v. *Morgan, supra,* 22 Cal.3d at p. 394 [149 Cal.Rptr. 375, 584 P.2d 512].)

For purposes of the following analysis, we may assume, as appellant contends, that a general verdict was an essential feature of a jury trial at common law and, therefore, that a statute which requires the jury to return a special verdict violates the constitutional right to trial by jury. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16.)[30] Section 264.1 provides terms of punishment of five, seven, or nine years for violations of sections 261 (rape) or 289 (penetration by foreign object) committed in concert, rather than the terms of three, six or eight years specified for violations of these sections not so committed. (§§ 264, 289, subd. (a).) ■ Because section 264.1 requires that the longer terms be imposed upon a defendant if the "fact" of acting in concert is "charged in the indictment or information and [ ] found to be true by the jury,"[31] appellant contends that the in concert allegation under section 264.1 amounts to a special verdict.

We disagree with this characterization. The Supreme Court in *People* v. *Davenport* (1985) 41 Cal.3d 247 [221 Cal.Rptr. 794, 710 P.2d 861] discussed special verdicts in the context of an argument that the special finding on truth of a special circumstance charged to make first degree murder a capital offense (§§ 190.1-190.4) is a special verdict. (*People* v. *Davenport, supra,* 41 Cal.3d at p. 274.) The court stated that since section 190.2 requires the jury "to reach a conclusion as to whether or not the charged special circumstance is true by applying legal principles on which they are instructed to the evidence presented to them," beyond a reasonable doubt and by unanimous

---

[30]Appellant notes that the scope of the right to trial by jury includes the essential features of a jury as it existed at common law when the Constitution was adopted. (*Patton* v. *United States* (1930) 281 U.S. 276, 288 [74 L.Ed. 854, 858, 50 S.Ct. 253, 70 A.L.R. 263].) For the proposition that a general verdict was such an essential feature, appellant quotes as follows: " 'Lord Mansfield, the great prerogative lawyer of the last age, admits, that "a Jury, by means of a general verdict are entrusted with a power of blending law and fact, and of following the prejudicies of their affections or passions. It is the duty (says he) of the Judge, in all cases of general justice, to tell the Jury how to do right, though they have it in their power to do wrong, which is a matter entirely between God and their own consciences." ' " (Quoted in *Morris* v. *U.S.* (9th Cir. 1946) 156 F.2d 525, 530 [169 A.L.R. 305].)

According to Blackstone, the verdict in a criminal case may be special only when the jury so chooses: "But an open verdict may be either general, guilty or not guilty, or special, setting forth all the circumstances of the case, and praying the judgment of the court, whether, for instance, on the facts stated, it be murder, manslaughter or no crime at all. This is where they *doubt* the matter of law, and therefore *choose* to leave it to the determination of the court; though they have an unquestionable right of determining upon all the circumstances and finding a general verdict, if they think proper so to hazard a breach of their oaths." (2 Blackstone's Commentaries 361, italics in original.)

[31]Section 264.1 provides in full: "The provisions of Section 264 notwithstanding, in any case in which the defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim, committed an act described in Section 261 or 289, either personally or by aiding or abetting the other person, that fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, the defendant shall suffer confinement in the state prison for five, seven, or nine years."

verdict, the statute "does not contemplate that a jury will return the kind of special verdict provided in section 1152." (*Ibid.*) Because the statute calls for "a finding of the *truth* or lack of truth of each circumstance, not the facts upon which that finding is based," it does not serve the purpose of the special verdict statutes. (*Id.,* at p. 275.)

The situation is similar here. The jury was instructed on the meaning of "in concert" and the requirement that they find such act beyond a reasonable doubt.[32] In finding the truth of this allegation (as in finding guilt under section 261, subdivision (2)), the jury reached a determination by applying the legal principles they were instructed upon to the facts in evidence. Since the jury had convicted of the simple rape charge (§ 261, subd. (2)), the in concert finding was the only legal conclusion required by section 264.1. The court drew no further conclusion by sentencing as authorized under section 264.1; it simply made operative the conclusion, reached by the jury beyond a reasonable doubt, that appellants had committed a violation of section 261 while voluntarily acting in concert.[33]

---

[32]The instruction was as follows: "It is charged in Counts No. I, II, V, VI, IX, X, XI and XII, that in the commission of the crimes described, the Defendants voluntarily acted in concert with each other and committed such crimes by force or violence, and against the will of a person upon whom the crimes were perpetrated. [¶] As used in this instruction, the phrase, 'acted in concert,' means two or more persons acting together in a group or gang sexual attacks. It includes not only those who personally engage in the acts constituting the crime but, also, those present who aid and abet a person in accomplishing it. To establish that a defendant acted in concert with another person, it is not necessary to prove there was any prearrangement, planning or scheme, the person aids and abets the commission of a crime if, with knowledge of the unlawful purposes of the crime, he aids, promotes, encourages, inudates [*sic*], by act or advice . . . the commission of such crime. [¶] If you find the Defendant guilty of such crimes charged, it will be your duty to determine whether or not they voluntarily acted in concert with each other and committed such crimes by force or violence, and against the will of such a person upon whom the crimes are perpetrated. Such Defendants may be found to have voluntarily acted in concert with another person and who have committed the crimes by force or violence, and against the will of such person, only if the proof shows beyond a reasonable doubt that they so acted. You will include a finding on that question in your verdict, using a form that will be supplied for that purpose."

[33]Appellant relies on *People* v. *Keltie, supra,* 148 Cal.App.3d 773 for the principle that a criminal defendant has the right to a verdict in which the jury makes the ultimate decision, so that even when "facts found true by the jury admit to but one legal conclusion, our system still allows the jury to either reach that conclusion or not, as they see fit." (*Id.,* at p. 786.) We do not dispute this principle, but the situation here is quite different from that in *Keltie*. There, the jury returned guilty verdicts on counts of felony hit and run (Veh. Code, § 20001) and felony driving under the influence (Veh. Code, § 23101), and asked the court whether its failure to agree on the question of ordinary or gross negligence meant that it had not reached a verdict on the vehicular manslaughter charge (§ 192, subd. (3)(a)). (148 Cal.App.3d at p. 783.) The court polled the jurors and determined that all agreed that defendant was guilty of at least ordinary negligence, then declared defendant guilty of manslaughter with ordinary negligence. (*Id.,* at p. 783.) Unlike the case here, the jury in *Keltie* had reached no *conclusion* on the manslaughter count when the trial court took this action.

The problem in section 264.1 is that its language superficially appears to be that of an enhancement statute (see *People* v. *Best* (1983) 143 Cal.App.3d 232, 236 [191 Cal.Rptr. 614]) and allows the kind of charging utilized in this case, a combination of charges of violation of section 261, subdivision (2) and special allegations of 264.1 (64 Ops.Cal.Atty.Gen. 819, 826 (1981).) The statute, however, "establishes a separate crime for rape in concert, not merely an enhancement." (*People* v. *Best, supra,* 143 Cal.App.3d at p. 236.)[34] That it does not contemplate the factual findings such as in a special verdict may be inferred from a comparison of section 264.1 with other provisions in the Penal Code regarding sex offenses committed in concert. The in concert forms of sodomy and oral copulation are also made punishable by terms of five, seven or nine years rather than the three, six or eight year terms specified for the offenses in their simple forms. (§§ 286, subd. (d), 286, subd. (c) [sodomy]; 288a, subd. (d), 288a, subd. (c) [oral copulation].) These offenses, however, are each defined in subsections of the statute defining various forms of the offense, without reference to specific charging and findings as in section 264.1. (§§ 286, subd. (d), 288a, subd. (d).) Despite the unfortunate drafting of section 264.1, it is clear that its purpose, " 'to discourage gang sexual assaults where any unlawful force is used' " (64 Ops.Cal.Atty.Gen. 819, 826, quoting *People* v. *Wheeler* (1977) 71 Cal.App.3d 902, 907 [139 Cal.Rptr. 737), is the same as that of sections 286, subdivision (d), and 288a, subdivision (d). (*Ibid.*) All these provisions contemplate a conviction by jury trial. Indeed, violation of section 264.1 *should* be charged and specified in a verdict form as a distinct offense. (Compare CALJIC No. 17.21 [in concert finding] with CALJIC No. 10.01 (1985 rev.) [rape, etc. by concerted action].)[35] Nevertheless, because the finding on truth of an in concert allegation under section 264.1 involves the jury's application of law to facts, with no further legal conclusion to be drawn by the court, appellants have not been denied the right to a jury trial on their convictions under this section. We agree with the conclusion of the court in *People* v. *Best, supra,* 143 Cal.App.3d at page 238, that a jury's findings of guilt of rape accomplished

---

[34]*Best* determined that section 264.1 defines a separate offense from the facts that it specifies three alternative punishments, rather than setting out an additional term to be appended to a base term punishment, and is referred to elsewhere in the Penal Code as a separate sex "offense" or "violation" or as a substantive crime for which additional punishment by way of enhancements may be applied. (*People* v. *Best, supra,* 143 Cal.App.3d 232, 235-237.) The information in this case had charged commission of forcible rape under Penal Code section 261, subdivision (2) while acting in concert without specifying section 264.1 as a separate crime. (143 Cal.App.3d at p. 237.) The court rejected contentions that appellants were therefore not convicted by the jury of the separate crime in section 264.1 and deprived of the constitutional right to notice of the charges against them, albeit without addressing the special verdict issue presented here.

[35]We note that this case was tried before *People* v. *Best, supra,* clarified that section 264.1 constitutes a separate offense.

in concert does amount to a finding of guilt under section 264.1. (*People* v. *Best, supra,* 143 Cal.App.3d at p. 238.)[36]

### III.

### *Uncharged in Concert Violations*

■ On counts 5 and 6, the jury found that appellants had committed acts of penetration by foreign object (§ 289, subd. (a)) while acting in concert. Appellants were sentenced for the in concert offense under section 264.1.[37] The information did not contain in concert allegations. Appellants correctly contend that they may not be convicted of a crime neither charged nor necessarily included in a charged offense. (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368 [173 Cal.Rptr. 453, 627 P.2d 183]; *In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5].) Penetration by foreign object in concert is obviously not necessarily committed in the commission of simple penetration by foreign object.[38]

The reason for the rule prohibiting conviction of uncharged offenses is that " ' "[d]ue process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." [Citations.]' " (*People* v. *Lohbauer, supra,* 29 Cal.3d at p. 368, quoting *People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409].) Consequently, an exception to this rule exists when a defendant consents to the substituted charge. (*People* v. *Geiger* (1984) 35 Cal.3d 510, 526 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]; *People* v.

---

[36]Appellant further contends that the verdict procedures used on counts 9, 10, and 12 were unconstitutional. Although these counts charged violations of sections 286, subdivision (d), and 288a, subdivision (d), which appellant acknowledges do not present the special verdict problem just discussed, the verdict forms actually used were like those on the rape and penetration counts, specifying violations of sections 286 and 288a, with special findings of in concert. For the reasons stated above, we do not view these special findings as special verdicts. We note, additionally, that the jury was correctly instructed that appellants were charged with committing the acts of sodomy and oral copulation "while voluntarily acting in concert with another person," rather than that acting in concert was separately alleged as to these counts.

[37]The court minutes record conviction of "Penal Code section 289, in concert"; the abstract of judgment lists these convictions as under Penal Code section 289, subdivision (d). Section 289, subdivision (d) is a definitional provision; the notations may result from the fact that the in concert forms of sodomy and oral copulation appear in subsection (d) of sections 286 and 288a, respectively. The court's sentence of nine years on these counts can only have been imposed under section 264.1, as the upper term in section 289 is eight years. As the parties recognize, penetration by foreign object in concert is a violation of section 264.1.

[38]" ' " 'The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' " . . . ' " (*People* v. *Lohbauer, supra,* 29 Cal.3d at p. 369; *People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512].)

*Lohbauer, supra,* 29 Cal.3d at p. 367; *In re Robert G.* (1982) 31 Cal.3d 437, 444 [182 Cal.Rptr. 644, 644 P.2d 837].) Consent to conviction of a lesser offense has been found, for example, when a defendant requests jury instruction on a lesser offense (*People* v. *Ramos* (1972) 25 Cal.App.3d 529, 539 [101 Cal.Rptr. 230]; *People* v. *Chavira* (1970) 3 Cal.App.3d 988, 991-992 [83 Cal.Rptr. 851]; *People* v. *Rasher* (1970) 3 Cal.App.3d 798, 801-803 [83 Cal.Rptr. 724]; see *People* v. *Geiger, supra,* 35 Cal.3d 510, 526 ) or urges the court to convict on the lesser offense. (*People* v. *Taylor* (1969) 273 Cal.App.2d 477, 485 [78 Cal.Rptr. 51].)

Appellants contend that the consent rule, or implied amendment of the information, is inapplicable where the conviction is of a greater offense. Although the cases do not explicitly so state, and *Geiger* uses the broad language of "uncharged offense" (35 Cal.3d 510, 528 ), all involve convictions for lesser offenses. Conviction for an uncharged greater offense not only raises the problem of notice but makes the inference of consent more difficult, as there is no reason why a defendant should acquiesce in substitution of a greater for a lesser offense.

On one view of the present case, it would appear that appellants were not prejudiced by any lack of notice: all the other sex offenses were charged in concert, and the acts of penetration occurred during the same sequence of events.[39] On the other hand, the fact that both the original information *and* the amended information alleged in concert for all the sex offenses *except* the penetration would tend to suggest that in concert allegations were not intended as to these counts. Moreover, *Lohbauer* suggests that lack of prejudice cannot be the focus of inquiry because of the difficulty in determining whether a defendant has been " 'misled to his prejudice' " and " 'prevented from preparing an effective defense.' " (29 Cal.3d at p. 370.)[40] Rather, consent is the one exception to the *Lohbauer* rule. (*In re Robert G., supra,* 31 Cal.3d at p. 444.)

---

[39]There is some indication that in concert allegations were in mind on cross-examination, when Ramirez's attorney asked whether his client placed an egg in Carol's vagina; the prosecutor on redirect established that Ramirez got the eggs from the kitchen. This testimony, however, would also go to the issue of aiding and abetting and whether Ramirez could be convicted of simple penetration.

[40]*Lohbauer's* discussion of this issue came in rejecting an argument that the definition of necessarily included offenses (which may be convicted upon although not charged) should include immaterial variances between charged and lesser offenses which do not prejudice a defendant's ability to prepare a defense. (29 Cal.3d at pp. 369-370.) The facts of that case illustrated how, despite knowledge of the conduct upon which charges are based, the focus of a defense may vary depending on the actual charges. (*Id.,* at pp. 370-371 [specific intent for burglary focus of trial; conviction of trespass].) While it is difficult to imagine what defense not offered here might have been offered if acting in concert had been alleged, *Lohbauer's* caution is specifically against making such an inquiry.

This case presents no active acquiescence in the greater charge (cf. *People v. Ramos, supra,* 25 Cal.App.3d 529; *People v. Rasher, supra,* 3 Cal.App.3d 798, 801-803), nor benefit from dismissal of a greater charge from which consent may be inferred. (Cf. *People v. Francis* (1969) 71 Cal.2d 66, 74-75 [75 Cal.Rptr. 199, 450 P.2d 591]; *People v. Calder* (1970) 6 Cal.App.3d 931, 936 [86 Cal.Rptr. 446].) The only basis for inferring consent is appellants' failure to object to verdicts including the in concert allegations. We decline to hold that a consent is established by the absence of objection (*People v. Lewis* (1982) 131 Cal.App.3d 457, 460 [182 Cal.Rptr. 471]) especially where, as here, appellant could have no incentive to object and risk amendment of the information to charge the greater offense.

Accordingly, the convictions under Penal Code section 264.1 must be reduced to simple penetration under section 289, subdivision (a).

## IV.

### Enhancement Under Penal Code Section 12022.8

■ Appellants were charged on counts 1, 2, 5, 6, 9, 10, 11 and 12 with inflicting great bodily injury in commission of these sex offenses. The jury found true the allegations pertaining to counts 2, 6, 9, 11 and 12, involving Vivian, and found untrue the allegations concerning offenses against Carol. At sentencing, the court imposed five-year enhancements on counts 2, 6, 9, 11 and 12.[41] The jury was not instructed that in determining the truth of the allegations it had to find *personal* infliction of great bodily injury. Appellants contend that section 12022.8 requires personal infliction of great bodily injury and that, therefore, the enhancements under this section must be stricken.

Penal Code section 12022.8 provided: "Any person who inflicts great bodily injury, as defined in Section 12022.7, on any victim in a violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a shall receive a five-year enhancement for each such violation in addition to the sentence provided for the felony conviction." The CALJIC instruction designed for this enhancement requires the jury to find that the defendant "did *personally* inflict great bodily injury" (CALJIC No. 17.20.1, italics added). The trial court, over objection, deleted the word personally from the instruction.[42] The judge viewed as incredible the idea that the

---

[41] The 12022.8 sentence on count 2 was stayed, and sentences on counts 9, 11 and 12 were run concurrently with the other counts.

[42] The jury was instructed "It is charged in Counts No. I, II, V, VI, IX and X, XI and XII, that in the commission of rape, sodomy, oral copulation and penetration with a foreign object,

enhancement could be precluded by the fact that the defendants purposefully kept the victims from seeing who actually inflicted their injuries, and expressly imposed the enhancement without a "personal" limitation in order to allow the issue to be tested.

No published case has addressed the issue of a "personal" requirement under section 12022.8. Our analysis is guided, however, by interpretation of the similarly worded section 12022.3, which provides for enhancements for any person who "uses" or "is armed with" a deadly weapon in commission of violations of sections 261, 264.1, 286, 288, 288a or 289.[43] Sections 12022.3 and 12022.8 each deal with enhancements of sex offenses. Unlike analogous provisions for enhancement of other felonies in sections 12022 [being armed with firearm or use of dangerous weapon], 12022.5 [use of firearm], and 12022.7 [infliction of great bodily injury], sections 12022.8 and 12022.3 do not explicitly provide for personal or derivative liability.

*People* v. *Reed* (1982) 135 Cal.App.3d 149 [185 Cal.Rptr. 169] interpreted section 12022.3, subdivision (b) to apply only to defendants personally armed with a firearm or deadly weapon. (*Id.,* at p. 151.) The court noted that sections 12022, subdivision (b), 12022.7 and 12022.5 all expressly require "personal" culpability and that " 'choice of the word "personally" necessarily excludes those who may have aided or abetted the actor directly inflicting the injury.' " (*Id.,* at p. 152, quoting *People* v. *Cole* (1982) 31 Cal.3d 568, 572 [183 Cal.Rptr. 350, 645 P.2d 1182].) Section 12022, subdivision (a), on

---

Defendants Michael Ramirez and Martin Gomez, with specific intent to inflict such injury, inflicted great bodily injury on Carol . . . and Vivian . . . [¶] If you find the Defendants guilty of those charges as set forth in the counts that I have just read to you, it will then be your duty to determine whether or not the Defendants, with the specific intent to inflict such injury, inflicted great bodily injury as herein defined, on Carol . . . and Vivian . . ., in the commission of sodomy, oral copulation and penetration by foreign object. The burden is on the People to prove this beyond a reasonable doubt. [¶] If the amount of force used in the commission of the rape, sodomy, oral copulation and penetration by foreign object, has resulted in significant or substantial physical injury to any part or portion of the body, the injury would constitute great bodily injury, within the meaning of this instruction. [¶] Rape, sodomy, oral copulation and penetration by foreign object do not, in and of themselves, constitute great bodily injury as just defined. Minor or moderate injuries of a temporary nature inherent in the crimes of rape, sodomy, oral copulation and penetration by foreign object, do not constitute great bodily injury, within the meaning of this instruction. [¶] You will include a finding on this charge, in your verdict using a form that will be supplied for that purpose. You are instructed that for the purposes of the allegations relating to the infliction of great bodily injury, a crime is not complete until the perpetrator has won his way to a place of temporary safety."

[43]Section 12022.3 provides: "For each violation of Section 261, 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon."

the other hand, applies " 'whether or not such person is personally armed with a firearm.' " (*Ibid.*) *Reed* concluded that the Legislature knows how to expressly limit or impose derivative liability, and that its failure to do either in section 12022.3 renders the provision ambiguous. (*Id.,* at p. 152.) This ambiguity led the court to apply the principles enunciated in *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306] that legislative direction is required in order to impose derivative liability (*Id.,* at pp. 241-242) and that a penal statute should be construed " 'as favorably to the defendant as its language and the circumstances of its application reasonably permit,' " entitling defendant to " 'the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used . . . .' " (*Id.,* at p. 242, quoting *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)[44] Accordingly, section 12022.3 was construed to entail a "personal" requirement.

*People* v. *Le* (1984) 154 Cal.App.3d 1 [200 Cal.Rptr. 839] reached the opposite conclusion. The court stated that extension of the *Reed* analysis leads to the "absurd" result that if "two perpetrators commit a rape—one holding a gun to the victim's head while the other rapes her—only the one holding a gun receives an enhancement," and that the Legislature would have used the word "personally" if it intended to impose a personal restriction, as it did in sections 12022, subdivision (b), 12022.5, and 12022.7. (*Id.,* at p. 11.)

The recent case of *People* v. *Piper* (1986) 42 Cal.3d 471 [229 Cal.Rptr. 125, 722 P.2d 899] indicates that the *Reed* analysis is the one we are obliged to follow. In *Piper,* the Supreme Court determined that Penal Code section 1192.7, subdivision (c)(8), which defines "serious felony" as including "any other felony in which the defendant inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant uses a firearm" applies only to defendants who personally use a firearm. (*Id.,* at p. 478.) The court's analysis of the firearm use provision of subdivision (c)(8) was based on the principles in *Walker* which guided the *Reed* court (*id.,* at pp. 476-477), as well as the fact that "[s]ince *Walker,* the Legislature has been quite explicit when it intends an enhancement provision to apply to a defendant even though he does not commit the proscribed act." (*Id.,* at p. 477; cf. § 12022, subd. (a).) The court approved the "similar conclusion" reached

---

[44]In *Walker, supra,* 18 Cal.3d 232, the Supreme Court was faced with an enhancement statute which, at that time, neither used the term "personally" nor expressly directed derivative liability. The court determined that nothing in the legislative history of section 12022.5 indicated an intent to change prior constructions of enhancements for being armed which limited their application to those personally armed (*id.,* at p. 241) and relied on the principles stated in the text to conclude that section 12022.5 has such a personal requirement. (*Id.,* at pp. 241-243.) Subsequent amendment of the provision confirmed this conclusion by adding the word "personally." (§ 12022.5.)

in *People* v. *Reed,* and noted that the court in *People* v. *Le* "took no note of [the] *Walker* decision." (*Id.,* at p. 477, fn. 5.)

The Supreme Court's analysis of enhancement provisions with similar semantic characteristics to section 12022.8 compels us to view that section as entailing a requirement that the defendant personally inflict great bodily injury. Just as the provisions construed in *Walker, Piper,* and *Reed,* section 12022.8 contains no direction to impose vicarious liability, and since enhancement statutes relate to penalties rather than substantive offenses " '[t]he rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime.' " (*People* v. *Piper, supra,* 42 Cal.3d at p. 476, quoting *People* v. *Walker, supra,* 18 Cal.3d 232, 242 ; cf. § 31.) While section 12022.8 could be more explicit, the reference to "any person who inflicts great bodily injury" implies personal infliction,[45] and the Legislature's failure to use the word "personally" does not amount to a direction to impose derivative liability.[46]

The failure to instruct the jury that section 12022.8 requires a finding that the defendant personally inflicted great bodily injury was obviously prejudicial, since the evidence in this case leaves doubt as to which appellant inflicted Vivian's wounds. The enhancements must be stricken.

## V.

### Multiple Enhancements

Appellant Gomez received enhancements for deadly weapon use (§§ 12022.3, 12022, subd. (b)) on counts 1, 2, 5, 6, 8, 9, 11 and 12 as well as for infliction of great bodily injury (§ 12022.8) on counts 2, 6, 9, 11, and 12. He argues that because all the weapon enhancements were based on his continuous use of a knife in an indivisible course of conduct, and all the great

---

[45]Section 12022.8 refers to "great bodily injury, as defined in Section 12022.7." Section 12022.7 defines "great bodily injury" in a separate paragraph from that establishing the enhancement to be imposed on a person who "personally inflicts great bodily injury" in commission of a felony. We therefore disagree with appellants' suggestion that section 12022.8's incorporation of the definition of "great bodily injury" in section 12022.7 also incorporated the latter's "personal" requirement.

[46]Although we thus disagree with the court in *People* v. *Le* as to the significance of the absence of the word "personally," we note our sympathy with the policy concerns which moved both the court in *People* v. *Le* and the trial court in this case to avoid the "personal" limitation —especially on the facts of this case, in which the personal requirement allows two equally culpable defendants to escape an enhanced sentence because they prevented the victims from being certain which one *personally* inflicted great bodily injury.

bodily injury enhancements on the infliction of Vivian's knife wounds, section 654 precludes imposition of more than one enhancement each for knife use and infliction of great bodily injury.[47]

Appellant relies on the rule of *In re Culbreth* (1976) 17 Cal.3d 330, 333 [130 Cal.Rptr. 719, 551 P.2d 23], prohibiting imposition of enhancements on more than one offense where "all the charged offenses are incident to one objective and effectively comprise an indivisible transaction . . . ." The Supreme Court has reaffirmed the *Culbreth* rule since passage of the determinate sentencing law, stating that the legislation gave no indication of intent to abolish the single occasion rule. (*People* v. *Cardenas* (1982) 31 Cal.3d 897, 913-914 [184 Cal.Rptr. 165, 647 P.2d 569].) The court noted, however, that a possible exception to the *Culbreth* rule was established in section 1170.1, subdivision (h) (*id.,* at p. 913), now redesignated subdivision (i),[48] which states that "the number of enhancements which may be imposed shall not be limited" for "violation[s] of subdivision (2) or (3) of Section 261, Section 264.1, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm . . . ." (§ 1170.1, subd. (i).)[49] The clear implication of this dicta is that *Culbeth* continues to limit the number of enhancements which may be imposed on offenses other than those specifically designated in section 1170.1, subdivision (i).

Several appellate courts have explicitly held that section 1170.1, subdivision (i) overruled *Culbreth* with regard to the enumerated offenses, thereby authorizing multiple enhancement of sentences imposed under section 667.6, subdivision (c) (*People* v. *Huber* (1986) 181 Cal.App.3d 601, 630-631 [227 Cal.Rptr. 113]; *People* v. *Bergman* (1984) 154 Cal.App.3d 30, 36-38 [201 Cal.Rptr. 54]; *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 68-71 [204 Cal.Rptr. 124]; *People* v. *Le, supra,* 154 Cal.App.3d 1, 12-13; *People* v. *Fields* (1984) 159 Cal.App.3d 555, 571 [205 Cal.Rptr. 888 ]) or section 667.6, subdivision (d). (*People* v. *Huber, supra,* 181 Cal.App.3d at pp. 630-631; *People* v. *Fitch* (1985) 171 Cal.App.3d 211, 214-215 [217 Cal.Rptr. 197].)

---

[47]Having determined in the preceding section of this opinion that the section 12022.8 enhancements must be stricken for failure to instruct the jury that it must find *personal* infliction of great bodily injury, we need not decide whether multiple enhancements would otherwise be permissible in this situation. Accordingly, we address here only the issue of multiple weapon use enhancements.

[48]The provision was redesignated without substantive change. (Stats. 1982, ch. 1515, eff. Sept. 30, 1982, ch. 1551, § 1.5.)

[49]Section 1170.1, subdivision (i), provides: "For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement."

Cases to the contrary hold that section 1170.1, subdivision (i), does not apply to sentencing under section 667.6, subdivision (c), because this latter section provides for an alternative sentencing scheme to which the provisions of section 1170.1 are inapplicable. (*People* v. *McElrath* (1985) 175 Cal.App.3d 178, 188-189 [220 Cal.Rptr. 698]; *People* v. *Rodriguez* (1984) 160 Cal.App.3d 207, 211-218 [206 Cal.Rptr. 563]; *People* v. *Maciel* (1985) 169 Cal.App.3d 273, 279-280 [215 Cal.Rptr. 124]; *People* v. *Carter* (1983) 144 Cal.App.3d 534, 542-543 [193 Cal.Rptr. 193].)[50] We are not persuaded by the reasoning of these cases that section 1170.1, subdivision (i), applies only to sex offenses sentenced under the principal-subordinate scheme of section 1170.1 itself. (*People* v. *Huber, supra,* 181 Cal.App.3d at p. 631.)

Additionally, section 12022.3 provides independent support for imposition of multiple weapons use enhancements on sex offenses, regardless of whether sentencing is under section 1170.1 or section 667.6. (*People* v. *Blevins, supra,* 158 Cal.App.3d 64, 71; *People* v. *Rodriguez, supra,* 160 Cal.App.3d 207, 218 fn. 13; *People* v. *McElrath, supra,* 175 Cal.App.3d 178, 189-190.) Section 12022.3 provides: "For each violation of Section 261, 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon." The reference to "each violation" indicates an intent that enhancements under this section should not be limited. (*People* v. *Blevins, supra,* 158 Cal.App.3d at p. 71; *People* v. *McElrath, supra,* 175 Cal.App.3d at p. 190.)

Accordingly, we find that the weapon use enhancements were properly imposed upon appellant's sentences for the sexual offenses. (*People* v. *Huber, supra,* 181 Cal.App.3d at p. 631.)[51] The enhancement under section 12022, subdivision (b), on count 8, robbery, was also properly imposed. (*Ibid.*) Although *Culbreth* would preclude enhancement of additional nonsex offenses for weapon use, all other such enhancements in the case were stayed. To hold that sentence on count 8 could not be enhanced because robbery

---

[50]*People* v. *Rodriguez, supra,* 160 Cal.App.3d at page 219, footnote 13, determined that section 1170.1, subdivision (i) *does* apply to subdivision (d) of section 667.6 because subdivision (d) does not begin with the provision that it be applied "in lieu" of section 1170.1, as does subdivision (c).

[51]Appellant contends that section 1170.1, subdivision (i), is at least inapplicable to counts 9, 10 and 12 (sodomy and oral copulation) for analogous reasons to those discussed in section VI of this opinion, that section 1170.1, subdivision (i), requires unlimited enhancement for "any violation of . . . sodomy or oral copulation by force, violence, duress, menace or *threat of great bodily* harm as provided in Section 286 or 288a" (italics added) while appellant was convicted of committing sodomy and oral copulation, as defined in sections 286 and 288a, "by means of force, violence, duress, menace or *fear of immediate and unlawful bodily injury.*" (Italics added.) We need not decide this issue as we have determined that the weapon use enhancement is independently authorized by section 12022.3, which presents no such semantic inconsistency.

is not an offense enumerated in section 1170.1, subdivision (i), would eviscerate the effect of that section to allow unlimited enhancement of sex offenses in addition to any other enhancements.

## VI.

### *Sentencing Under Penal Code Section 667.6*

Appellants were sentenced on counts 9 (sodomy in concert), 10 (sodomy in concert) and 12 (oral copulation in concert) under section 667.6, subdivision (c). This section then provided in pertinent part: "In lieu of the term provided in Section 1170.1, a full, separate and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, *or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm* whether or not the crimes were committed during a single transaction." (Italics added.)[52] The statutes defining the crimes of which appellants were convicted in these counts, by contrast, require a finding of perpetration "*by means of force or fear of immediate and unlawful bodily injury on the victim or another person.*" (§§ 286, subd. (d); 288a, subd.(d).) The jury was instructed in the language of the statutes defining the offenses and the verdict forms do not require a distinction whether the offenses were committed by means of force or fear. Consequently, it cannot be determined from the record whether the convictions were based on force or fear and, if the latter, whether fear of great bodily harm or the lesser degree of immediate bodily injury.[53]

Appellants contend that sentencing under section 667.6 is impermissible without a jury finding that the offenses were perpetrated by the means which trigger application of the statute. We agree.

Several appellate court cases have determined that sentence under section 667.6, subdivision (c), or 667.6, subdivision (d), for violations of sections

---

[52]The section has since been amended to substitute the words "fear of immediate unlawful bodily injury on the victim or another person" for "threat of great bodily harm." (Stats. 1985, ch. 401.)

[53]The verdict forms do contain allegations that the defendants intentionally inflicted great bodily harm in commission of the offense within the meaning of Penal Code section 12022.8, which were found true on counts 9 and 12 and false on count 10. The instructions on great bodily injury, however, direct the jury to determine, after finding the defendant guilty of the offense, whether great bodily injury was intentionally inflicted in commission of the offense, noting that for purposes of this determination, the crime is not complete until the perpetrator has won his way to a place of safety. Under these instructions, the jury need not have believed the sex offenses were themselves committed *by means* of threat of great bodily harm; indeed, the only evidence of such harm was the stab wounds which occurred after the sex offenses.

286 or 288a may be imposed only upon specification in a jury's verdict whether the conviction was based on force or fear and, if the latter, what degree of fear. (*People* v. *Reyes* (1984) 153 Cal.App.3d 803, 813 [200 Cal.Rptr. 651]; *People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1057 [216 Cal.Rptr. 865]; *People* v. *Riffey* (1985) 171 Cal.App.3d 419, 425 [217 Cal.Rptr. 319]; *People* v. *Reber* (1986) 177 Cal.App.3d 523, 535 [223 Cal.Rptr. 139].) The reason for this requirement is that sentencing under section 667.6 is authorized only where a defendant has been found guilty beyond a reasonable doubt of the offense triggering use of the section; for violations of section 288a perpetrated by means of threat or fear, this includes proof that the threat or fear was of great bodily harm. (*People* v. *Riffey, supra,* 171 Cal.App.3d 419, 425; *People* v. *Foley, supra,* 170 Cal.App.3d 1039, 1056-1057.)

As explained in *People* v. *Foley, supra,* at pages 1051-1052 and *People* v. *Riffey, supra,* at page 423, when subdivision (c) of section 667.6 was enacted, sections 286 and 288a also used language of "threat of great bodily harm." Consequently, for convictions under these sections "[t]he consecutive sentence permitted by Penal Code section 667.6, subdivision (c), [was] based on the crime for which convicted; no additional factual finding incidental to another charge [was] necessary." (*People* v. *Stought* (1981) 115 Cal.App.3d 740, 742, 743 [171 Cal.Rptr. 501].) Sections 286 and 288a were subsequently amended to use the present "immediate and unlawful bodily injury" language. *Foley* and *Riffey* view the resulting present disparity in language as a matter of legislative oversight. (*Foley, supra,* 170 Cal.App.3d at p. 1056; *Riffey, supra,* 171 Cal.App.3d at p. 424.) They refuse, however, to assume that the Legislature intended to transfer from jury to judge the factfinding function necessary to follow application of section 667.6, subdivision (c), and therefore require pleading and proof of great bodily injury, and clear jury instructions and findings, before the section may be utilized. (*People* v. *Foley, supra,* at pp. 1055-1057; *People* v. *Riffey, supra,* at pp. 424-425.)[54]

Respondent argues that these cases were wrongly decided in that there was never a requirement in section 667.6 that the jury find the factual predicate for its application. The contention is based on the provision, in a different subdivision of 667.6, for a factual predicate determined by the court, and on respondent's interpretation of the fact that the Legislature has now amended section 667 to use the "immediate and unlawful injury" language. (Stats. 1985, ch. 401.)

Subdivision (d) of section 667.6, which uses the same language as subdivi-

---

[54]*People* v. *Reyes, supra,* 153 Cal.App.3d 803, reached the same conclusion regarding section 667.6, subdivision (d).

sion (c) regarding force or fear, makes mandatory the imposition of full consecutive terms for violations of the enumerated statutes "if the crimes involve separate victims or involve the same victim on separate occasions."[55] Respondent focuses on the fact that the court, not the jury, decides the question of separate occasions. This issue, however, is very different from that concerning the bodily in jury language appearing in both subdivisions (c) and (d). Sections 667.6, subdivisions (c) and (d) govern the court in sentencing upon convictions found by the jury. The separate occasion issue arises neither as part of the underlying conviction, nor as an additional fact upon which punishment is based, as in an enhancement,[56] but as a direction akin to that in section 654 as to how punishment may be imposed. Section 654 prohibits multiple punishment for a single act or transaction; section 667.6, subdivision (c), *allows* multiple punishment for separate convictions by authorizing consecutive sentences "whether or not the crimes were committed during a single transaction," and section 667.6, subdivision (d), *requires* multiple punishment when the crimes involve separate victims or occasions. Before the issue of punishment is ever reached, there must be a conviction; one element of the offense is that concerning force or fear of bodily injury.

As for the 1985 change in the language of section 667.6, respondent contends that the Legislature's amendment by means of urgency legislation "to immediately clarify legislative intent and avoid unnecessary loss of justified enhancements" (Stats. 1985, ch. 401, § 2) indicates that *Reyes, Foley,* and *Riffey* were incorrect as to the requirement of jury findings. On the contrary, the effect of the amendment is to assure once again that a conviction of violation of sections 286 or 288a will in and of itself trigger application of section 667.6.

We agree with the courts in *Reyes, Riffey* and *Foley* that sentencing under section 667.6, subdivision (c), is authorized only where a defendant has been found guilty beyond a reasonable doubt of the offense triggering use of the section. For violations of sections 286 and 288a, this includes a finding of great bodily harm. *Reyes, Riffey* and *Foley,* however, do not discuss a stan-

---

[55]Section 667.6, subdivision (d), provides in pertinent part: "A full, separate, and consecutive term *shall* be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person *if the crimes involve separate victims or involve the same victim on separate occasions.*" (Italics added.)

[56]The heading of section 667.6 is worthy of note: "Enhancement for prior conviction or prison term; full separate and consecutive terms for certain violations." Subdivisions (a) and (b) of section 667.6 concern five and ten year enhancements for prior convictions and prison terms, respectively; subdivisions (c) and (d) concern punishment for "*violations,*" i.e., for convictions returned by the jury.

dard of review for the erroneous use of section 667.6, subdivision (c). Where it is clear from the evidence and jury findings that the jury could *only* have found that the offenses were committed by force or fear of great bodily harm, we would hold the error harmless and would not preclude sentencing under section 667.6, subdivision (c).

*Reyes* illustrates the significance of the conflict between sections 268 and 288a, on the one hand, and section 667.6, subdivision (c), on the other, because it is a case where the evidence might have supported a finding that the sex offenses were perpetrated by means of a fear of less than great bodily harm. The case involved victims aged 9 and 12 who testified, for example, that the defendant "told" or "made" them perform the acts in question, and threatened to "hit" them. The *Reyes* court was thus faced with uncertainty as to the jury's findings on the means by which the offenses were perpetrated and on the degree of any threat used. (153 Cal.App.3d at p. 811.) Specificity in jury findings was necessary before section 667.5 could be used because the offenses charged could be "committed in alternative ways" (*id.*, at p. 813), while section 667.6, subdivision (d), required certain means of perpetration.

In the present case, by contrast, the evidence could support only findings of either force or fear of great bodily harm. The victims testified that appellants perpetrated the various sex offenses over a period of hours in which the victims were confined in their apartment. Both men brandished knives throughout this time, and both used the knives to cut off the victims' undergarments prior to commission of the sex offenses. Ramirez tied Vivian to the bed with electrical cords and hit her in the face. Gomez threatened to slit Carol's throat, to kick her in the stomach, cut off her breast or cut out an eye; and to cut the baby out of her stomach if she moved.

On this evidence, if the jury believed that the sex offenses were perpetrated by inducing fear, it must have believed that the fear was of great bodily injury: there was simply no evidence to support a finding of threats of only a lesser degree of harm. Consequently, specificity in jury findings is not essential.[57] Under any standard of review, the trial judge was justified in sentencing under section 667.6, subdivision (c).[58]

---

[57]We recognize that *People* v. *Riffey* involved offenses carried out at knifepoint and under threat of death (171 Cal.App.3d at p. 421) and *People* v. *Reber* also involved offenses perpetrated by means of threatened and actual extreme violence. (177 Cal.App.3d at pp. 527-528.) To the extent that *Riffey, Foley, Reyes* or *Reber* require reversal on the theoretical possibility that an offense might have been perpetrated in a manner which would preclude application of section 667.6, subdivision (c), we disagree with these decisions.

[58]We need not determine the appropriate standard of review in this case because we find the error harmless even under the most stringent test. The error here, although apparently one of sentencing, is really in jury instruction—failing to require a clear finding of either force or threat of great bodily harm. It can be argued that this error removed the issue of great bodily

## VII.

### *Statement of Reasons for Sentencing Choices*

In sentencing appellant Gomez, the trial court first imposed consecutive indeterminate terms on the conspiracy counts. Counts 3, 4, 7, 8 and Gomez's violation of probation were then sentenced under section 1170.1, with counts 3, 4, and 8 the aggravated terms and the total sentence run concurrently with the indeterminate term.[59] The aggravated terms were imposed because the court found that the record was "replete with factors in aggravation" and that "the factors in aggravation predominate." Finally, the sex offenses were sentenced under section 667.6. Aggravated terms were imposed upon all but count 10; the court at the outset listed the factors in aggravation upon which it would rely in sentencing both appellants on these counts, stating that the number of such factors was greater than the number of counts to receive aggravated terms. Sentences on counts 1, 2, 5, 6 and 10 were imposed consecutively; those on counts 9, 11 and 12 were imposed concurrently with each other and the other sex offenses; and the total section 667.6 term was run consecutively with the indeterminate sentence. The court followed a similar pattern in sentencing appellant Ramirez, but imposed an additional six years because of the "extraordinarily serious nature of the defendant's priors."

 Appellant Ramirez contends that the trial court erred in failing to state reasons for sentencing the sex offenses under section 667.6 rather than section 1170.1, and for imposing consecutive rather than concurrent sentences. Appellant Gomez contends that the court erred in failing to clarify which reasons were stated to support the decision to impose aggravated terms and which to support consecutive sentencing, that insufficient reasons were stated to support the choice of upper term consecutive sentences under section 1170.1, and that no reasons were stated to support imposition of the consecutive indeterminate sentences.

---

harm from the jury's consideration, making applicable the reversible per se rule of *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826]: although finding on the issue of great bodily harm was not necessary for appellants' conviction of the offense charged, it was a prerequisite to the increased deprivation of liberty authorized by section 667.6, subdivision (c).

We would deem *Garcia* inapplicable to this case as we do not view the issues as having been completely removed from the jury's consideration. Rather, the jury considered evidence of threat which could only support finding a threat of great bodily injury. Even if *Garcia* did apply, however, this case falls within its fourth exception (*Garcia, supra,* 36 Cal.3d at pp. 555-556): the record establishes as a matter of law that the crime was committed by means of force or fear of great bodily harm, with no contrary evidence worthy of consideration. Assuming therefore that reversal per se is not required, we are confident that, on the facts of this case, the error is harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18; *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101].)

[59]Counts 3 and 4 were stayed under section 654.

We need not address each of these contentions in detail, as the case must in any event be remanded for resentencing in accordance with previous portions of this opinion. We therefore simply state in general terms the relevant rules.

First, it does not appear that the court gave reasons for utilizing section 667.6 rather than section 1170.1 or for imposing consecutive sentences. While sentencing under section 667.6, subdivision (d), does not require a statement of reasons, because the section is mandatory in situations where it applies (*People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585]), sentencing under the discretionary section 667.6, subdivision (c) "is a 'sentence choice' for which reasons must be stated." (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 347 [193 Cal.Rptr. 882, 667 P.2d 686].) The reasons which justify imposition of consecutive sentences under either section 667.6, subdivision (c), or 1170.1 may be the same, but the choice to utilize the harsher provisions of section 667.6, subdivision (c), must be separately explained. (*Id.*, at p. 348; *People* v. *Bishop* (1984) 158 Cal.App.3d 373, 382 [204 Cal.Rptr. 502].) Separate reasons are not required, however, for each consecutive sentence. (*People* v. *Hetherington* (1984) 154 Cal.App.3d 1132, 1142 [201 Cal.Rptr. 756]; *People* v. *Smith* (1984) 155 Cal.App.3d 539, 545-546 [202 Cal.Rptr. 259]; *People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 705 [173 Cal.Rptr. 71].)

 Second, although the judge made clear he was aware of the requirement that reasons be stated for selection of upper term sentences and did not feel he was making dual use of facts (see Cal. Rules of Court, rule 441), he did not consistently state which factor was being utilized to impose which upper term. The method of summarizing at once all the factors in aggravation to be used, as done here with respect to the section 667.6 sentence, or of stating that aggravating factors predominate without specifying the factor relied upon (see Cal. Rules of Court, rule 439(c)),[60] as done with the 1170.1 sentencing, makes appellate review more difficult. The reasons for imposing upper terms or consecutive sentences should be applied to the particular count or term being sentenced. (*People* v. *Ibarra* (1982) 134 Cal.App.3d 413, 426 [184 Cal.Rptr. 639].) Similarly, the reasons should be separately stated as to each defendant being sentenced. The same fact may not be used to impose a consecutive sentence and the aggravated term. (*People* v. *Key* (1984) 153 Cal.App.3d 888, 901 [203 Cal.Rptr. 144]; *People* v. *Cheeks* (1982) 135 Cal.App.3d 826, 830 [185 Cal.Rptr. 496]; *People* v. *Bejarano, supra,* 114

---

[60]California Rules of Court, rule 439(c) provides: "The facts and reasons for selecting the upper or lower term shall be stated orally on the record, and shall include a concise statement of the ultimate facts which the court deemed to constitute circumstances in aggravation or mitigation justifying the term selected."

Cal.App.3d 693, 704-705; *People* v. *Lawson* (1980) 107 Cal.App.3d 748, 757 [165 Cal.Rptr. 764].)

Finally, we need not determine whether a statement of reasons is required for imposition of consecutive indeterminate sentences, for, as explained in the unpublished portion of our opinion, the facts of this case preclude conviction on more than one count of conspiracy.

The judgment shall be modified to adjudge each appellant guilty of a single count of conspiracy, and of two counts of simple penetration by foreign object in violation of section 289, subdivision (a). As so modified, the judgment is affirmed. The sentence is vacated and the case remanded for resentencing in accordance with the views expressed in this opinion.

Rouse, J., and Benson, J., concurred.

Petitions for a rehearing were denied February 6, 1987, and respondent's petition for review by the Supreme Court was denied April 2, 1987.