[Crim. No. 24650. Aug. 21, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ISADORE ALEXANDER PIPER, Defendant and Appellant.

472

## COUNSEL

Robert Fiedler, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GRODIN, J.**—This case, like *People* v. *Equarte, ante,* page 456 [229 Cal.Rptr. 116, 722 P.2d 890], requires us to determine the proper interpretation of the "serious felony" provisions of Penal Code sections 667 and 1192.7, subdivision (c) as applied to an offense that is not expressly listed by name in the statutes.[1] The question here is whether the trial court properly imposed a separate, additional five-year enhancement on the basis of defendant's prior conviction of shooting at an occupied vehicle (§ 246). We hold that the offense of shooting at an occupied vehicle may constitute a "serious felony" under the two categories of section 1192.7, subdivision (c) which define "serious felony" to include "any felony" in which the defendant uses a firearm or a dangerous or deadly weapon (§ 1192.7, subds. (c)(8), (c)(23)), provided it is established that the defendant personally used a firearm or a dangerous or deadly weapon in the commission of the offense. Because "personal use" was not an element of defendant's prior conviction and because under our recent decision in *People* v. *Jackson* (1985) 37 Cal.3d 826, 836 [210 Cal.Rptr. 623, 694 P.2d 736], the prosecution may not go behind the prior conviction to prove additional facts, we conclude that the five-year enhancement attributable to the conviction should be reversed.

[1]Sections 667 and 1192.7, subdivision (c) are set out in full in *People* v. *Equarte, supra, ante,* pages 444, 445, footnotes 4 and 5.

Unless otherwise noted, all statutory references are to the Penal Code.

## I

In July 1983, defendant was charged by information with arson (§ 451, subd. (d)), possession of a flammable substance with intent to set a fire (§ 453, subd. (a)), and felony dissuading a witness from reporting a crime (§ 136.1, subd. (c)). The information also alleged that defendant had previously been convicted of two "serious felonies" within the meaning of sections 667 and 1192.7: (1) voluntary manslaughter and (2) shooting at an occupied vehicle. Defendant pleaded not guilty and denied the serious felony allegations.

At trial defendant was convicted of the arson and possession of flammable substance charges but was found guilty of only misdemeanor dissuading a witness. (§ 136.1, subd. (a).) The jury also found that he had suffered prior convictions of voluntary manslaughter and shooting at an occupied vehicle.

At sentencing, the court imposed the middle term of two years for the arson conviction, and added a consecutive ten-year term under section 667 on the basis of the two prior convictions. Thus, defendant's total sentence was set at 12 years.[2]

On appeal, defendant contends that the trial court erred in imposing a five-year enhancement under section 667 on the basis of his shooting-at-an-occupied-vehicle prior. The Court of Appeal rejected his claim and we granted review to consider the matter with the related questions presented in *People* v. *Equarte*.

## II

As noted, in this case defendant received two separate five-year enhancements under section 667. Defendant concedes that one of the enhancements was properly imposed; he acknowledges that both his present arson conviction and his prior voluntary manslaughter conviction are "serious felonies" under the explicit terms of section 1192.7, subdivisions (c)(14) and (c)(1). The only question before us is whether the second five-year enhancement—based on defendant's prior shooting-at-an-occupied-vehicle conviction—was authorized.

Unlike arson or voluntary manslaughter, shooting at an occupied vehicle is not one of the specifically named felonies enumerated in section 1192.7,

---

[2]The court imposed a two-year term on the possession of flammable substance conviction, but stayed the sentence pursuant to section 654. With respect to the misdemeanor dissuading a witness conviction, the court imposed a 12-day sentence, corresponding to the time defendant had served before sentencing.

subdivision (c). The Court of Appeal concluded that that prior was nonetheless properly considered a "serious felony" for purposes of section 667 under two of the more general categories of section 1192.7, subdivision (c): subdivision (c)(23)—"any felony in which the defendant personally used a dangerous or deadly weapon," and subdivision (c)(8)—". . . any felony in which the defendant uses a firearm."[3]

As in *Equarte,* defendant contends that neither subdivision (c)(23) nor subdivision (c)(8) is applicable here on the grounds that those subdivisions do not apply (1) when use of a deadly weapon or firearm is an element of the underlying felony or (2) when an independent enhancement relating to the use of the weapon or firearm was not charged and established.[4] For the reasons discussed in *Equarte,* we find that defendant's suggested reading of subdivisions (c)(23) and (c)(8) is incompatible with the rationale of our decision in *People* v. *Jackson, supra.* ■ Thus, we conclude that the offense of shooting at an occupied vehicle is not, by its nature, exempt from the possible application of subdivisions (c)(23) and (c)(8). If all of the factual elements of those subdivisions are adequately alleged and proven, the offense may be found to be a "serious felony" for purposes of section 667.

■ Nonetheless, there are problems with the Court of Appeal's invocation of the two subdivisions to support a serious felony finding in this case. Here, unlike in *Equarte,* the question is whether *a prior conviction,* rather than *the current offense,* is a serious felony. ■ *Jackson* makes clear that—at least in the absence of a valid admission that the prior constitutes a serious felony for purposes of section 667—"proof of a prior conviction establishes only the minimum elements of the crime . . . and . . . the prosecution cannot go behind the record of the conviction and relitigate the circumstances of the offense to prove some fact which was not an element of the crime." (37 Cal.3d at p. 834; see also *id.* at p. 836.) ■ Thus, the question is whether the "minimum elements" of the shooting-at-an-occupied-vehicle conviction establish all of the elements of subdivisions (c)(23) and (c)(8).

With respect to subdivision (c)(23), it is clear that the prior conviction is not sufficient. By its terms, subdivision (c)(23) applies only to a felony

---

[3]For convenience, section 1192.7, subdivisions (c)(23) and (c)(8) will hereafter be referred to simply as subdivision (c)(23) and subdivision (c)(8).

[4]As in *Equarte,* defendant contends that subdivision (c)(23) was intended to refer to cases in which an enhancement was imposed under section 12022, subdivision (b). He claims that subdivision (c)(8) applies only to cases in which an enhancement was imposed under section 12022.5. Section 12022.5 provides in relevant part: "Any person who personally uses a firearm in the commission or attempted commission of a felony shall . . . be punished by an additional term of imprisonment . . . for two years, unless use of a firearm is an element of the offense of which he or she was convicted."

"in which the defendant *personally* used a dangerous or deadly weapon." (Italics added.) "Personal use" of a weapon is not an element of the offense of shooting at an occupied vehicle; a defendant may be convicted of that offense if he has not used a weapon but has simply aided or abetted another who used the weapon. Thus, the enhancement cannot be sustained on the basis of subdivision (c)(23).

Whether the enhancement can be sustained under subdivision (c)(8) depends on whether that category was similarly intended to apply only when the defendant has *personally* used a firearm in the commission of a felony. The People contend that subdivision (c)(8) should not be interpreted to require personal use, emphasizing that whereas subdivision (c)(23) specifically refers to "personal use," subdivision (c)(8) refers only to "use." For a number of reasons, we cannot accept the People's argument.

We begin with the wording of subdivision (c)(8) itself. It defines "serious felony" to mean "any other felony in which the defendant inflicts great bodily injury on any person, other than an accomplice, *or any felony in which the defendant uses a firearm.*" (Italics added.) Although the subdivision does not expressly speak in terms of "personal use," its syntax clearly suggests that it was intended to apply only to cases in which the defendant himself uses a firearm. If the broader application—which the People propose—had been intended, it is likely that the provision would have defined serious felony to include any felony "in which a firearm is used" rather than "in which the defendant uses a firearm."

Furthermore, prior decisions interpreting similar "use" language support the conclusion that subdivision (c)(8) should be construed to require a showing of personal use. In *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], we considered whether the provisions of former section 12022.5—which authorized an additional five-year sentence for "any person who uses a firearm in the commission of [specified offenses]"—should be interpreted to apply only to those defendants who personally used a firearm. ▇▇ In analyzing the issue, we explained: "Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. . . . [T]he rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime." (18 Cal.3d at pp. 241-242.) ▇▇ Because former section 12022.5 contained no explicit suggestion that derivative liability was intended, we concluded in *Walker* that the statute should be interpreted to apply only to defendants who personally used a firearm. (See

also *People* v. *Cole* (1982) 31 Cal.3d 568, 574-576 [183 Cal.Rptr. 350, 645 P.2d 1182] [reviewing history of subsequent legislative revisions of enhancement provisions relating to use of a firearm].)

Since *Walker,* the Legislature has been quite explicit when it intends an enhancement provision to apply to a defendant even though he himself does not commit the proscribed act. For example, section 12022, subdivision (a)—which provides a one-year enhancement for "[a]ny person who is armed with a firearm in the commission . . . of a felony"—goes on specifically to provide that "[t]his additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not such person is personally armed with a firearm."

Subdivision (c)(8), of course, contains no similar language indicating that it was intended to apply even when the defendant himself did not personally use a firearm. Accordingly, the principle of interpretation applied in *Walker* supports the conclusion that the subdivision should be construed to apply only to defendants who personally use a firearm in the commission of a felony.[5]

█ Finally, even if the juxtaposition of the language of subdivision (c)(23) and subdivision (c)(8) creates some ambiguity as to the reach of subdivision (c)(8), under settled principles such ambiguity must properly be resolved in favor of the defendant. (See, e.g., *Keeler* v. *Superior Court* (1979) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)[6]

---

[5]Justice Puglia, writing for the Court of Appeal in *People* v. *Reed* (1982) 135 Cal.App.3d 149 [185 Cal.Rptr. 169], reached a similar conclusion in construing the comparable language of an analogous sentencing statute, section 12022.3. Section 12022.3 provides that "[f]or each violation of [various sex offenses], and in addition to the sentence provided, any person shall receive an enhancement (a) of three years *if such person uses a firearm or any other deadly weapon* in the commission of such violation or (b) of two years *if such person is armed with a firearm or any other deadly weapon.*" (Italics added.) In analyzing whether section 12022.3, subdivision (b) applies only to persons who are "personally" armed with a firearm or deadly weapon, Justice Puglia observed that the provision is not as clear as other related enhancement provisions, and, applying the principles of *Walker,* concluded that the provision should be construed to apply only to defendants who are personally armed. (135 Cal.App.3d at pp. 152-153.) Although a different panel of the Court of Appeal reached a contrary conclusion in applying section 12022.3, subdivision (b) in *People* v. *Le* (1984) 154 Cal.App.3d 1, 11-12 [200 Cal.Rptr. 839], the *Le* court took no note of our *Walker* decision.

[6]We recognize that if "personal use" is required for both subdivision (c)(8) and subdivision (c)(23), any offense that qualifies as a "serious felony" under the use-of-a-firearm portion of subdivision (c)(8) will also qualify under the broader use-of-a-dangerous-or-deadly-weapon provisions of subdivision (c)(23). As explained in rejecting a contention by the defendant in *Equarte, supra, ante,* page 465, however, an overview of all of the categories of section

Accordingly, we conclude that the "use" portion of subdivision (c)(8) applies only to defendants who have personally used a firearm in the commission of a felony. Because, as explained above, "personal use of a firearm" was not a necessary or "least adjudicated" element of defendant's prior shooting-at-an-occupied-vehicle conviction, under *Jackson* that conviction does not provide a sufficient basis for the application of subdivision (c)(8).

Thus, the judgment of the Court of Appeal, upholding the imposition of a five-year enhancement on the basis of the prior shooting-at-an-occupied-vehicle conviction, is reversed. The case is ordered remanded to the trial court for modification of sentence in accordance with the views expressed herein.

Bird, C. J., Broussard, J., and Reynoso, J., concurred.

**PANELLI, J.,** Dissenting.—I respectfully dissent. I agree with the majority's conclusion "that the offense of shooting at an occupied vehicle is not, by its nature, exempt from the possible application of subdivision (c)(23) and (c)(8)." However, unlike the majority, I believe the minimum elements of the offense of shooting at an occupied vehicle (Pen. Code, § 246[1]) necessarily make the offense a "serious felony" for the purpose of sections 667 and 1192.7, subdivision (c). In my view, whether the defendant personally used the firearm or was an accomplice to its use is irrelevant as far as subdivision (c)(8) of section 1192.7 is concerned. The majority, on the other hand, holds that the offense described in section 246 can be a serious felony only if *personal* use of a firearm has been alleged and proved.

Subdivision (c)(8), in part, defines a serious felony as "any felony in which the defendant uses a firearm." I am unable to read the provision to require *personal* use of a firearm. This is especially true in view of subdivision (c)(23) of the same section which defines as a serious felony one "in which the defendant *personally* used a dangerous or deadly weapon." (Italics added.) The language is unambiguous; it needs no construction in order to understand its plain meaning. "It is a settled principle in California law that 'When statutory language is thus clear and unambiguous there is

---

1192.7, subdivision (c), reveals that the separate categories were not carefully drafted to avoid overlapping. It would simply be reading too much into subdivision (c)(23) to suggest that its reference to "personal use" was intended to expand the reach of subdivision (c)(8) to include derivative liability.

[1]Penal Code section 246 reads in pertinent part as follows: "Any person who shall maliciously and wilfully discharge a firearm at an . . . occupied motor vehicle . . . shall be punished by imprisonment in the state prison for two, three or four years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year."

All further statutory references are to the Penal Code.

no need for construction and courts should not indulge in it.' (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)'' (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) Obviously a firearm is *both* a firearm and a dangerous and deadly weapon. If subdivision (c)(8) is construed to require personal use as does subdivision (c)(23), then subdivision (c)(8) is totally useless and superfluous in defining a serious felony. It is not reasonable or logical for the electorate to specify *personal* use in the case of a deadly weapon and then in another subdivision of the same section, to omit the word "personal" unless the omission was intended to mean something and have some real effect. The construction given to (c)(8) by the majority does violence to the fundamental principle of statutory construction that an interpretation making some words surplusage is to be avoided. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]; see also *People* v. *Arwood* (1985) 165 Cal.App.3d 167, 173 [211 Cal.Rptr. 307].)

The majority relies on *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306] as the basis for the holding that the word "use" in subdivision (c)(8) is to be construed as requiring a showing of personal use. However, I believe *Walker* is inapposite. There the question was whether former section 12022.5—which authorized an additional five-year sentence for "any person who uses a firearm in the commission of [specified offenses]"—should be interpreted to apply only to those defendants who personally used a firearm. Stating that "the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime" (*id.*, at p. 242), we held that section 12022.5 should be interpreted to apply only to defendants who personally used a firearm. (*Id.*, at pp. 241-242.)

Whatever the merit of the *Walker* holding in the context of the sentence enhancement statute there at issue, the stated limitation on derivative liability can have no application here, where if the offense is committed at all, its "manner" of commission—involving the use of a firearm—is the same whether the defendant is the actor who personally used the firearm or is an aider or abettor. The use enhancement under consideration in *Walker* seeks to punish the offender who commits the base offense in a more violent or dangerous manner, while section 1192.7, subdivision (c) seeks to define those *crimes* and that conduct which the electorate considered particularly dangerous to society. Sections 667 and 1192.7, subdivision (c) have as their goal deterrence of repeat offenders. The purpose of these sections was to deter recidivism as to certain crimes, the commission of which was considered "serious." Subdivision (c) of section 1192.7 simply defines those crimes and that conduct which fall under the "serious" category.

We recognized this purpose in *People* v. *Equarte, ante,* page 456 [229 Cal.Rptr. 116, 722 P.2d 890], when we discussed subdivision (c)(23) and determined that the provisions of sections 667 and 1192.7, subdivision (c)(23) did not enhance a defendant's sentence simply because he personally used a dangerous or deadly weapon. As stated in *Equarte,* "personal use of such a weapon simply places the defendant in the *category* of serious offenders who may have their sentence increased *if* they have previously been convicted of another serious felony." (*Id.,* at p. 464.)

Here, too, defendant's sentence is not enhanced simply by the use of a firearm in the prior offense; rather his prior conviction of an offense, the minimum elements of which include *use* of a firearm, places him in a category of offenders who may have their current sentence increased if the current offense is another serious felony.

The drafters of sections 667 and 1192.7 manifested an intention to impose harsher sentences on those offenders who more than once committed violent crimes or engaged in criminal conduct so dangerous that it was perceived to "call for enhanced punishment equivalent to that imposed upon violent recidivists." (*People* v. *Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736].) In enacting sections 667 and 1192.7, the electorate was entitled to conclude, as it evidently did, that firearm use poses a greater threat to public safety than does use of other dangerous and deadly weapons. It is not unreasonable to classify as "serious" a crime in which a defendant, either personally or as an aider and abettor, "uses" a firearm, while also limiting the "serious" classification to those crimes (not otherwise included) where the defendant "personally used" a dangerous or deadly weapon which is not a firearm.

The statute on its face plainly distinguishes between "use" and "personal use." The electorate viewed defendants convicted of offenses involving use of a firearm sufficiently dangerous to be subjected to the harsher sentencing scheme directed at repeat offenders. Under the guise of statutory construction where none is needed, the majority thwarts the manifest intent of the people, and in the process, nullifies the firearm-use provision of subdivision (c)(8). I would affirm.

Mosk, J., and Lucas, J., concurred.