[No. B040876. Second Dist., Div. Five. Apr. 9, 1990.]

In re JOSE D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE D., Defendant and Appellant.

**COUNSEL**

Nancy B. Sperber, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney

General, Marc. E. Turchin and Joan Comparet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—Jose D. appeals from the juvenile court's order declaring him a ward of the court (Welf. & Inst. Code, § 602) by reason of his having committed attempted second degree murder during which he inflicted great bodily injury as a result of discharging a firearm from a motor vehicle (Pen. Code, §§ 664/187, 12022.55) and two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). He contends: "I. Insufficient evidence was presented to support the finding that appellant was an aider and abettor. II. The finding pursuant to Penal Code section 12022.55 was improper."

We conclude appellant was properly found guilty of the charged crimes as an aider and abettor, but the court erred in finding true the alleged enhancement under Penal Code section 12022.55, since appellant was not the shooter.

Viewed in accordance with the usual standard governing appellate review (*In re Dennis B.* (1976) 18 Cal.3d 687, 697 [135 Cal.Rptr. 82, 557 P.2d 514]), the evidence established that about 11 a.m. on October 4, 1988, a small blue Toyota automobile with two girls in back and two boys, later identified as appellant and Aaron G., in front, approached Nancy C. and Sheila R. as they were riding a bicycle near Budlong and 43d Street. Everyone in the car was saying "M.S. Rifa" which referred to a gang called "Matrucha." After the girls denied being from any gang, Sheila said some "bad words" to the occupants of the car, turned the bicycle around and rode on the sidewalk. The car followed them onto the sidewalk, and drove towards them, while the boy in the front passenger seat pulled out a gun. Sheila then drove the bicycle back onto the street and the car did the same. Nancy remembered appellant being in the car but could not remember whether he had been the passenger or driver. The girls bicycled home and, as they approached the driveway, the car was only six to seven feet behind them. As the girls turned into the driveway, the car continued down the street until it got to the corner where it stopped. A short time later, Nancy heard a gunshot. She went to the front yard and saw the blue Toyota driving away. Ismael Lopez, who had been in the front near the driveway, had been shot in the back.

Ismael Lopez testified that before he was shot, the blue Toyota pulled up in front of the house and parked for about a minute. Lopez turned around

and saw a gun sticking out of the passenger's side of the car. He pushed his friend's mother, who was standing next to him, out of the way and a bullet hit him in the middle left side of his back. Simon Lopez, Ismael's brother, also saw the gun protruding from the passenger's side of the blue Toyota. He was able to see the passenger who shot the gun and identified him as Aaron G.; however, he did not see the driver of the car.

About 4 p.m. on October 4, 1988, Los Angeles Police Detective Carl Sims, as a result of information received from people at the shooting, made an enforcement stop on a blue Toyota containing four male Hispanics. Appellant was driving the car and Aaron G. was a passenger in the right rear seat. Aaron G.'s clothing matched the description the officer had been given earlier. A .25-caliber chrome semiautomatic handgun was found on the front passenger floorboard of the car.

Appellant admitted driving his brother's blue Toyota on October 4 and stated that he followed the two girls because they were cussing at them and he wanted to know what they were saying. As he passed their house, people started swearing and throwing rocks. One of the men at the house took a baseball bat out of the trunk of a car and raised it over his head. Appellant did not know Aaron G. had a gun until he took it out and shot it. He had not seen Aaron G. point a gun at the girls earlier. He also denied trying to run over the girls with the car.

Aaron G. denied pointing the gun at the two girls. He also testified that when they drove back to the house, he thought the man, who started to pull something out of the trunk of a car, was going to pull out a shotgun because members of that gang have guns. He then pulled out his gun and fired to frighten them.

■ Appellant's contention that there was insufficient evidence that appellant was an aider and abettor to each of the three counts is meritless. The record contains sufficient evidence that appellant drove the car on the sidewalk as he was following the girls and deliberately maneuvered the car within three feet of them as Aaron G. pointed the gun at them. Appellant parked the car in front of the house as Aaron G. aimed the gun and shot Ismael Lopez. This supports the conclusion that he acted with the requisite knowledge and intent as an aider and abettor in each of the three offenses. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]; *People* v. *Mitchell* (1986) 183 Cal.App.3d 325, 329-330 [228 Cal.Rptr. 286].)

■ Appellant correctly contends, however, that the trial court erred in finding true as to appellant the enhancement alleged under Penal Code section 12022.55 (hereafter section 12022.55).

The essential portions of section 12022.55 provide that "any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury . . . or causes the death of a person, . . . as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony, shall, upon conviction of the felony or attempted felony," receive a mandatory consecutive five-year enhancement in addition to the punishment prescribed for the felony or attempted felony.[1]

The question presented by this case is whether this enhancement applies only to the person who discharged the firearm from a motor vehicle, or also applies to an aider and abettor like appellant who did not personally discharge a firearm.

The issue whether particular sentencing enhancements apply to aiders and abettors or only to the persons who personally commit the proscribed act has recurrently arisen. In a series of opinions the Supreme Court has set forth the principles of statutory interpretation for deciding such questions. (*People* v. *Walker* (1976) 18 Cal.3d 232, 238-244 [133 Cal.Rptr. 520, 555 P.2d 306]; *People* v. *Cole* (1982) 31 Cal.3d 568, 574-579 [183 Cal.Rptr. 350, 645 P.2d 1182]; *People* v. *Piper* (1986) 42 Cal.3d 471, 476-478 [229 Cal.Rptr. 125, 722 P.2d 899].) *Walker, Cole* and *Piper* compel the conclusion the Legislature did not intend the five-year enhancement in section 12022.55 to apply to an aider and abettor who did not discharge a firearm from a motor vehicle.

■ When statutory language is unambiguous, it does not require resort to other indications of legislative intent. (*People* v. *Cole, supra*, 31 Cal.3d at p. 572.) Examples of such legislative clarity include, on one hand, Penal Code section 12022.5, with its express limitation to a person who "personally uses" a firearm and, on the other hand, Penal Code section 12022, subdivision (a), with its express declaration that it "shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or

---

[1] Section 12022.55 provides: "Notwithstanding Section 12022.5, any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury, as defined in Section 12022.7, or causes the death of a person, other than an occupant of a motor vehicle, as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony, shall, upon conviction of the felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for five years."

The statute was enacted as an urgency measure, according to the urgency clause thereof, "[i]n order to make the shooting of motorists on this state's public streets and highways a serious felony offense, and in order to deter persons from violent actions upon our public streets and highways." (Stats. 1987, ch. 1147, § 5.)

not such person is personally armed with a firearm." (See *People* v. *Cole, supra,* 31 Cal.3d at pp. 572, 579; *People* v. *Piper, supra,* 42 Cal.3d at p. 477.)

■■ Section 12022.55, however, is not so explicit, and thus requires interpretation to determine the legislative intent. (See *People* v. *Reed* (1982) 135 Cal.App.3d 149, 152 [185 Cal.Rptr. 169]; *People* v. *Piper, supra,* 42 Cal.3d at p. 477, fn. 5.)

In *People* v. *Walker, supra,* 18 Cal.3d at pages 241-242, the Supreme Court explained a basic rule for approaching this issue. "Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. Such a direction is found in [Penal Code] section 31 which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. But the statute which defines aiders and abettors as principals in the commission of a criminal offense does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment ' "do not define a crime or offense but relate to the penalty to be imposed under certain circumstances." ' (Citations.) Hence the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime." (*Id.* at pp. 241-242.)

"Since *Walker,* the Legislature has been quite explicit when it intends an enhancement provision to apply to a defendant even though he himself does not commit the proscribed act." (*People* v. *Piper, supra,* 42 Cal.3d at p. 477.)

Section 12022.55 applies to *"any person who" "inflicts* great bodily injury" or *"causes the death"* of a person *"as a result of discharging* a firearm from a motor vehicle." (Italics added.) In *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 627 [233 Cal.Rptr. 645], the court held that the language of Penal Code section 12022.8, " 'any person who inflicts great bodily injury' implies personal infliction." Section 12022.55 similarly focuses upon the person who "inflicts" (injury) or "causes" (death) as a result of "discharging" a firearm. This language reasonably implies the personal discharging of the firearm. If the Legislature had intended this statute to have a broader scope, it is likely the Legislature would have made it applicable to a person committing a felony or attempted felony "in which a firearm was discharged" from a motor vehicle, or "in which a principal discharged a firearm" from a motor vehicle. (See *People* v. *Piper, supra,* 42 Cal.3d at p. 476.)

A statute should not be interpreted in a manner leading to absurd results (*People* v. *Fulton* (1984) 155 Cal.App.3d 91, 102 [201 Cal.Rptr. 879]), but there is nothing absurd in a legislative conclusion that the person who actually discharged a firearm from a motor vehicle should receive a greater punishment than aiders and abettors who are liable for the underlying offense itself.

Respondent points out that section 12022.55 begins with the language, "Notwithstanding Section 12022.5 . . . ." Respondent argues that since section 12022.5 applies only to one who "personally uses" a firearm, the Legislature intended a broader application in section 12022.55. This contention is not persuasive. The "notwithstanding" clause was needed in order to distinguish the five-year enhancement of section 12022.55 from the then existing two-year enhancement under section 12022.5.

Respondent points out that the same chapter which enacted section 12022.55 also enacted Penal Code section 246.1, relating to forfeiture of vehicles used in certain crimes, and amended Penal Code section 12034, involving drivers or owners of vehicles who knowingly permit another person to carry or discharge a firearm from the vehicle. (Stats. 1987, ch. 1147, §§ 1, 2, 3.) Respondent contends this shows the Legislature's "awareness of the scenario involved in a gang drive-by shooting and also is indicative that this package of bills pertains to all the occupants of such a vehicle." This contention is not persuasive, however, that the Legislature intended the five-year enhancement in section 12022.55 to apply to participants other than the shooter. It merely shows that the Legislature dealt with the criminal liability of a vehicle owner or driver in a variety of ways. The fact that the legislation addressed an urgent problem of criminal violence does not necessarily suggest the Legislature intended to punish all participants indiscriminately.

The language of section 12022.55 reasonably implies it is limited to the person who discharged the firearm. This conclusion is supported by the general rule stated in *People* v. *Walker, supra*, 18 Cal.3d at pages 241-242. This interpretation also leads to a reasonable result, since the Legislature could reasonably conclude that the person who actually discharged a firearm from the vehicle in the commission or attempted commission of a felony deserves greater punishment than the other participants who are liable as aiders and abettors for the underlying felony or attempted felony. After *Walker* the Legislature is presumed to be aware of the need for statutory clarity to impose derivative liability in a sentencing enhancement. The Legislature has not clearly imposed such derivative liability in section 12022.55, and under controlling Supreme Court decisions, we must conclude the Legislature did not intend to do so.

The judgment is modified by striking therefrom the finding that the allegations of the petition under Penal Code section 12022.55 are true. In all other respects the judgment is affirmed.

Lucas, P. J., and Turner, J., concurred.