[No. B088840. Second Dist., Div. Five. June 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE GUTIERREZ et al., Defendants and Appellants.

[No. B092486. Second Dist., Div. Five, June 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW JAMES GONZALES, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I through III and parts V through VIII under Discussion.

806

**COUNSEL**

William D. Farber, Patricia L. Watkins and Christopher Blake, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GRIGNON, J.—Defendants and appellants Steve Gonzales, Andrew Gonzales[1] and Eddie Gutierrez appeal from judgments in case No. B088840 after a jury trial in which they were convicted of second degree murder, four counts of attempted murder, and shooting at an occupied motor vehicle. Their second degree murder sentences were enhanced pursuant to Penal Code section 12022.5, subdivision (b)(1) for causing the death of an occupant of a motor vehicle by discharging a firearm. In the published portion of this opinion, we conclude that the enhancement is applicable only to a defendant who personally discharges a firearm and whose firearm discharge causes the death or great bodily injury.

In the unpublished portion of the opinion, we address defendants' remaining contentions. Defendants contend insufficient evidence supports their convictions, testimony of a witness's subjective fear of retaliation was improperly admitted and a mistrial should have been declared after a juror was excused. Steve further contends the trial court erred in failing to hold an adequate *Marsden*[2] hearing, denying his request to represent himself and refusing to hear his request for substitute counsel to prepare a new trial motion. We modify the judgments and affirm.

Andrew also appeals from a judgment in case No. B092486 following a guilty plea in which he was convicted of attempted murder and sentenced concurrently with the sentence in case No. B088840. Andrew raises no issues on appeal. The prosecution contends Andrew was improperly awarded presentence credit. We modify the judgment and affirm.

### PROCEDURAL BACKGROUND

Defendants were charged by information with one count of murder in violation of Penal Code section 187, subdivision (a), four counts of attempted murder in violation of Penal Code sections 664 and 187, subdivision (a), and one count of shooting at an occupied motor vehicle in violation of Penal Code section 246. The murder charge carried allegations against each defendant of discharging a firearm at an occupied motor vehicle causing great bodily injury or death within the meaning of Penal Code section 12022.5, subdivision (b)(1) and of a principal being armed with a firearm within the meaning of Penal Code section 12022, subdivision (a)(1).

---

[1] Because two defendants and a witness are named Gonzales, they will be referred to by their first names.

[2] *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

The case proceeded to trial before a jury on February 4, 1994. On February 17, 1994, the jury deadlocked and the trial court declared a mistrial.[3]

The case was retried to a jury beginning May 4, 1994. Defendants were found guilty as charged in the information. The murder was found to be in the second degree.

Gutierrez and Steve were each sentenced to an indeterminate term of 15 years to life for the murder, plus 5 years for discharging a firearm at an occupied motor vehicle causing death or great bodily injury. They were each sentenced to a consecutive middle term of seven years for one count of attempted murder and consecutive one-third middle terms on the three remaining counts of attempted murder. Sentence on shooting at an occupied motor vehicle was stayed pursuant to Penal Code section 654. The total sentence for these defendants was 34 years to life.

Andrew was sentenced to an indeterminate term of 15 years to life for the murder, plus 5 years for discharging a firearm at an occupied motor vehicle causing death or great bodily injury. Andrew was sentenced to a consecutive upper term of nine years for one count of attempted murder and concurrent middle terms of seven years for the other three counts of attempted murder. Sentence on shooting at an occupied motor vehicle was stayed pursuant to Penal Code section 654. The total sentence for Andrew was 29 years to life.

Defendants filed timely notices of appeal.

FACTS

Defendants are members of the Pico Nueva gang in Pico Rivera. They were among a group of approximately 10 people congregated in front of the Gonzales home at approximately midnight on Halloween in 1992.

Thomas Armendariz drove his Honda Civic, carrying six other passengers, Desiree Manugian, George Rodriguez, Michelle Wright, Sonia Regis, Michael Llamos and Brandy Salgado, into the neighborhood and parked across the street from the Gonzales residence. Regis left the car. She recognized one of the people in the crowd and asked him to get Carlos Gonzales, cousin to Steve and Andrew, because Manugian, Carlos's girl-friend, wanted to see him. When Carlos came out, Manugian and Salgado left the car and met Carlos on a corner on the opposite side of the street from the Gonzales residence. Regis returned to the car.

---

[3]The jury deadlocked 11-1 in favor of conviction with respect to Steve and 11-1 in favor of acquittal with respect to Andrew and Gutierrez.

Salgado and Manugian chose to remain, so Armendariz prepared to leave without them. When Armendariz began to drive away, he mistakenly drove toward a dead end. Realizing his mistake, he turned his car around and drove past the Gonzales residence. As the Armendariz car drove past the Gonzales residence, Rodriguez threw an empty bottle out the window of the car in the direction of the Gonzales house. Although Rodriguez was not affiliated with any gang, he yelled out "Barrio Norwalk" as the car drove past. Armendariz, also not affiliated with a gang, threw out the gang sign for Norwalk. Llamos was a member of the Norwalk gang.

Defendants immediately drew their weapons and fired repeatedly on the Honda Civic, as Armendariz tried to steer it out of the neighborhood. Carlos called out to Steve and Gutierrez and told them to stop shooting. After the car reached safety, the passengers discovered Rodriguez had been killed. None of the other passengers were injured, although the car had been hit repeatedly.

After the shooting, everyone outside the house, including defendants, Carlos, Manugian and Salgado, went inside the Gonzales residence. Steve and Andrew's mother turned off all the lights and shut the blinds. Steve and Gutierrez were in possession of handguns. Steve and Carlos argued, and Steve pulled a gun on Carlos and threatened to shoot him. Others in the house convinced Steve to relax. Carlos then went outside with the two girls, who eventually called Manugian's sister to pick them up. The day after the shooting, Manugian phoned Carlos, who told her that if she or Salgado said anything, he would have to take the blame for the shooting, or something would happen to one of them.

The Gonzales family lives next door to the Navarretes. Valerie Navarrete heard the shooting and then heard Steve calling her husband's name in back of the house. She woke her husband, David Navarrete, and sent him to talk to Steve. Steve handed three guns to David Navarrete over the fence. David Navarrete put the guns in his barbecue pit in the backyard. Later that night, when a deputy sheriff came to their door, the Navarretes directed the deputy to the guns, which were recovered from the barbecue pit. Steve later phoned the Navarretes and asked whether the police had found the guns. Steve wanted the guns back, because one belonged to his grandmother. Steve also told David Navarrete to tell the police he had found the guns in the front yard and moved them to the backyard.

The three guns recovered were one .380-caliber and two .25-caliber handguns. The bullet that killed Rodriguez was fired from the .380-caliber handgun. Some casings found at the scene of the shooting also came from

that weapon. Two cartridge cases recovered at the scene came from one of the .25-caliber handguns. Six others may have come from the other .25-caliber handgun. The .380-caliber murder weapon was owned by Steve and Andrew's grandmother. The gun had been returned to her by the sheriff's department on October 7, 1992, three weeks prior to the shooting.

Steve was the only defendant to present an affirmative defense. He offered the testimony of Anthony Chance, another Pico Nueva member, who testified that he alone did the shooting.[4] Chance testified that he had both the .380 and the .25-caliber handguns in his possession, which he had purchased earlier from David Navarrete. He had been alone in front of the Gonzales house when the car had passed. When a bottle had been thrown from the car, it had hit him. He had thought he saw a gun emerge from the driver's side window of the car, so he had pulled out both his guns and fired. He then hid both weapons, and a third that had not been used, in the Navarretes' backyard.

Steve also offered the testimony of Carlos, who testified that when the shots had been fired, he had grabbed Manugian and Salgado and hit the ground. He stated he could not identify the shooter and denied that he had told anyone to stop shooting.

DISCUSSION

I.-III.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

IV.  *Penal Code Section 12022.5, Subdivision (b)(1) Enhancement*

Defendants' sentences were each enhanced by five years pursuant to Penal Code section 12022.5, subdivision (b)(1). This subdivision provided for a five-year enhancement of the sentence of "any person who is convicted of a felony or an attempt to commit a felony, including murder or attempted murder, in which that person discharged a firearm at an occupied motor vehicle which caused great bodily injury or death to the person of another."[9] Defendants contend the jury was incorrectly instructed on the elements of this special allegation, because the jury was not instructed that the defendants must *personally* have discharged the firearm *which caused* the great bodily injury or death.

---

[4]Chance asserted his privilege against self-incrimination and was declared unavailable. His testimony from the first trial was read into evidence.

*See footnote, *ante,* page 804.

[9]The statute has been amended to provide for an enhancement of five, six or ten years.

The prosecution contends that Penal Code section 12022.5, subdivision (b)(1) is applicable to any of the defendants who personally used a firearm, as long as one of the defendants fired the shot that killed the victim. Alternatively, the prosecution contends that each defendant may be liable if he discharged a firearm at the victim and it is impossible to determine which defendant caused the victim's death.

We conclude Penal Code section 12022.5, subdivision (b)(1) applies only to defendants who personally discharge firearms which cause great bodily injury or death, and that the jury was therefore misdirected in this case. As it is reasonably probable a result more favorable to defendants would have been reached in the absence of this error, we modify defendants' sentences to vacate the Penal Code section 12022.5, subdivision (b)(1) enhancements and replace them with Penal Code section 12022.5, former subdivision (a) firearm use enhancements.[10]

## A. *Personally Caused Death*

■ Our primary duty when interpreting a statute is to determine and effectuate the Legislature's intent. (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1382 [46 Cal.Rptr.2d 542]; *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].) "When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written." (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co., supra*, 39 Cal.App.4th at p. 1382.) " 'Words used in a statute . . . should be given the meaning they bear in ordinary use.' (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 . . . .)" (*People* v. *Ramirez, supra*, 33 Cal.App.4th at p. 563.)

■ "The stated legislative purpose of [Penal Code] section 12022.5, subdivision (b)(1) . . . is 'to make the shooting at motorists on this state's public streets and highways a severely punishable offense and . . . to deter persons from violent actions upon our public streets and highways . . . .' (Stats. 1987, ch. 1159, § 3.)" (*People* v. *Davis* (1995) 41 Cal.App.4th 367, 374 [48 Cal.Rptr.2d 481].) The language of the statute is clear and unambiguous and effectuates the stated legislative purpose. Penal Code section 12022.5, subdivision (b)(1) applies to "any person who is convicted of a felony . . . in which *that person discharged a firearm* at an occupied motor vehicle *which caused* great bodily injury or death to the person of another." (Italics added.) This italicized language, given its ordinary meaning, provides that the defendant must have personally discharged a firearm, and the firearm discharged by the defendant must have caused the great bodily injury or death. The statute does not apply merely because "a firearm has been

---

[10]This provision is now codified at Penal Code section 12022.5, subdivision (a)(1).

discharged" or "a person has suffered great bodily injury or death." Instead, the language focuses on the causation of the injury by the culpable defendant.

The clear meaning of the statute's language is reinforced by Supreme Court authority interpreting similar language in other sentence enhancement statutes. Some sentence enhancements include language which specifically limits their application to a defendant who personally engaged in the proscribed conduct. (Pen. Code, §§ 12022, subd. (b)(1) ["Any person who *personally uses* a deadly or dangerous weapon"]; 12022.5, subd. (a)(1) ["[A]ny person who *personally uses* a firearm"]; 12022.7, subd. (a) ["Any person who *personally inflicts* great bodily injury"], italics added.) Others expressly provide for vicarious application. (Pen. Code, § 12022, subd. (a)(1) ["This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm"].) Because the Legislature has used "personally" in certain sentence enhancements to limit their application to defendants who have themselves engaged in the proscribed conduct and has expressly provided for vicarious liability in other enhancements, the issue has arisen as to whether the Legislature intends to impose vicarious liability in the absence of the word "personally" or an express provision for vicarious liability.

The Supreme Court has resolved this issue in a trilogy of cases. In *People v. Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], the Supreme Court confronted the issue with respect to a former version of the enhancement now found at Penal Code section 12022.5, subdivision (a)(1).[11] The enhancement then applied to "[a]ny person who uses a firearm in the commission" of an enumerated offense. (18 Cal.3d at pp. 235-236.) The Supreme Court determined the enhancement applies only to a defendant who personally uses a firearm, reasoning that if a statute is to impose derivative or vicarious liability, there must be some legislative direction to that end. The Supreme Court rejected the argument that Penal Code section 31, imposing liability on aiders and abettors, provides such authority with respect to sentence enhancements. (*People* v. *Walker, supra,* 18 Cal.3d at pp. 241-242.) The Supreme Court concluded that, in the absence of an express direction of vicarious liability, liability may be imposed on personal users only. (*Ibid.*) The Supreme Court compared Penal Code section 12022.5 to Penal Code section 12022, which at that time provided for application of a sentence enhancement to "any person who commits or attempts to commit any felony . . . while armed." As the Penal Code section 12022 enhancement had been held to apply only to defendants personally armed, the

---

[11]At the time, this enhancement was codified at Penal Code section 12022.5.

Supreme Court concluded the Legislature's use of the similar "any person who" language reflected a legislative intent to apply Penal Code section 12022.5 only to defendants personally using a firearm.[12] (18 Cal.3d at pp. 241-242, fn. 5.)

The Legislature responded to *Walker* by amending the Penal Code section 12022.5 "use" enhancement to include the word "personally" and the Penal Code section 12022 "armed" enhancement to provide for vicarious liability "whether or not such person is personally armed with a firearm." In *People v. Cole* (1982) 31 Cal.3d 568, 576 [183 Cal.Rptr. 350, 645 P.2d 1182], the Supreme Court determined that the Legislature's response to *Walker* had been "to uniformly limit the class of persons to whom the 'use' and 'great bodily injury' enhancements are applicable to those who themselves commit the prohibited conduct," while rejecting that limitation with respect to the "armed" enhancement. (*Id.* at p. 576.) Thus, the Supreme Court determined Penal Code section 12022.7, which enhances the sentence of a defendant who "personally inflicts" great bodily injury, is limited in its applicability to the defendant who performs the act directly inflicting the injury. (31 Cal.3d at pp. 571-572.)

Finally, in *People v. Piper* (1986) 42 Cal.3d 471 [229 Cal.Rptr. 125, 722 P.2d 899], the Supreme Court was called upon to determine whether Penal Code section 1192.7, former subdivision (c)(8), which makes "serious" any felony "in which the defendant inflicts great bodily injury . . . or any felony in which the defendant uses a firearm" could apply to a conviction of shooting at an occupied vehicle, in which the defendant's liability may have been only vicarious. The Supreme Court rejected the prosecution's assertion that the absence of the word "personally" indicated a legislative intent to impose vicarious liability. The fact that another subdivision of the statute, subdivision (c)(23), made serious any felony "in which the defendant personally used a dangerous or deadly weapon," did not compel the result that subdivision (c)(8) applied to cases of vicarious liability due to the absence of the word "personally." Reasoning that, after *Walker*, ". . . the Legislature has been quite explicit when it intends an enhancement provision to apply to a defendant even though he himself does not commit the proscribed act," the Supreme Court concluded that in the absence of an explicit direction to

---

[12]Penal Code section 12022.5 was enacted in response to a previous Supreme Court decision holding the Penal Code section 12022 armed enhancement inapplicable to cases where being armed was a necessary element of the crime committed. Penal Code section 12022.5 expressly states it applies regardless of whether use of the weapon is an element of the offense. (*People v. Walker, supra,* 18 Cal.3d at p. 241.)

impose derivative liability, an enhancement provision would not be read to so apply.[13] (42 Cal.3d at p. 477.)

Thus, after *Piper,* an enhancement which neither expressly authorizes vicarious liability nor expressly includes a "personally" limitation is read to apply only to defendants who personally engage in the proscribed conduct.[14] This court has followed *Piper* in concluding that vicarious liability is not imposed by Penal Code section 12022.55, which enhances the sentence of "any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury . . . or causes the death of a person, other than an occupant of a motor vehicle, as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony." (*In re Jose D.* (1990) 219 Cal.App.3d 582, 587-588 [268 Cal.Rptr. 364].) Likewise, the same rationale has been applied to Penal Code section 12022.3, which provides an enhancement if "the person uses a firearm" or deadly weapon in the commission of certain sex offenses. This enhancement does not apply vicariously. (*People* v. *Rener* (1994) 24 Cal.App.4th 258, 267 [29 Cal.Rptr.2d 392].)

Because there is no explicit indication in the language of Penal Code section 12022.5, subdivision (b)(1) that the enhancement is to apply vicariously, and, indeed, the ordinary meaning of the statute's language suggests otherwise, we conclude the enhancement applies only to a defendant who personally discharges a firearm at an occupied motor vehicle, and whose firearm discharge causes great bodily injury or death.

### B. *Prejudicial Effect*

The jury was not instructed that to return a true finding on the Penal Code section 12022.5, subdivision (b)(1) allegation, the jury had to find the defendant personally fired the fatal shot. Instead, the jury was instructed in the language of CALJIC No. 17.19 (1993 rev.), which set forth the elements of personal use of a firearm within the meaning of Penal Code section 12022.5, former subdivision (a).[15] Under this instruction, the jury could return a "true" finding with respect to a defendant if it concluded the

---

[13]While *Piper* was pending, the Legislature amended Penal Code section 1192.7, subdivision (c)(8) by inserting the word "personally" in each clause. (Stats. 1986, ch. 489, § 1, p. 1808.)

[14]*Piper* also noted that any ambiguity created by juxtaposing a subdivision containing a "personally" limitation and a subdivision silent on the issue must be resolved in favor of the defendant, resulting in neither subdivision imposing vicarious liability. (*People* v. *Piper,* *supra,* 42 Cal.3d at p. 477.)

[15]The jury was instructed as follows: "It is alleged in Counts one through six that the defendants personally used a firearm during the commission of the crimes charged. [¶] If you find any o[r] all of the defendants guilty of one or more of the crimes charged or a lesser and included felony offense, you must determine whether any or all of the defendants personally used a firearm in the commission of such felon[]ies. [¶] The word 'firearm' includes a

defendant "display[ed] a firearm in a menacing manner" without discharging it or discharged it without the discharge causing death or great bodily injury. This was error. We next consider whether the error was prejudicial.

■ The failure to instruct the jury on all elements of a statute imposing a sentence enhancement is prejudicial "only where it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error." (*People* v. *Wims* (1995) 10 Cal.4th 293, 298 [41 Cal.Rptr.2d 241, 895 P.2d 77].) On review, we examine the entire record, including the facts, instructions, arguments of counsel, communications from the jury during deliberations, and the entire verdict. (*Id.* at p. 315.)

■ We conclude it is reasonably probable a result more favorable to defendants would have been reached had the jury been instructed that vicarious liability is not a basis for a "true" finding under Penal Code section 12022.5, subdivision (b)(1). Only one passenger in the car suffered great bodily injury or death. That death was caused by one shot from one gun, the .380-caliber handgun. Only one defendant could have fired that shot, yet all three defendants' sentences were enhanced under this subdivision. Had the jury been properly instructed, it would have concluded that only one defendant could have been subject to the Penal Code section 12022.5, subdivision (b)(1) enhancement.

Indeed, the jury might well have concluded that the prosecution failed in its proof as to each defendant and therefore returned "not true" findings for all three defendants.[16] Very little evidence was introduced on the issue of which defendant fired the .380-caliber handgun. There were no fingerprints on any of the guns. The .380-caliber handgun was registered to Steve and Andrew's grandmother and had recently been in her possession. Indeed, Steve told the Navarretes he wanted the guns back because one of them (presumably the .380-caliber handgun) belonged to his grandmother. Although Manugian testified she had seen both Steve and Gutierrez with guns in the Gonzales residence after the shooting, and had even seen Steve draw his gun on Carlos, no attempt was made to elicit any testimony regarding which gun she had seen possessed by which defendant.

handgun. [¶] The term 'used a firearm,' as used in this instruction, means to display a firearm in a menacing manner, or intentionally to fire it. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. [¶] You will include a special finding on that question in each verdict, using a form that will be supplied for that purpose."

[16]Indeed, the jury may have concluded Andrew did not shoot at all. The jury's verdicts as to Steve and Gutierrez were dated May 16 and 17, 1994. On May 18, 1994, the jury submitted the question, "Can, by law, a person be holding a hand gun not pointing or firing and still be considered aiding and abet[t]ing?" The trial court correctly responded that this "is a question of fact which [the jury is] going to have to resolve." However, the factual scenario contemplated by the jury certainly would not support a "true" finding under Penal Code section 12022.5, subdivision (b)(1).

The prosecution relies on an exception to the personal liability rule which allows imposition of a great bodily injury enhancement when it is impossible to determine which defendant inflicted the injury, but all defendants engaged in conduct of a nature that could have caused the injury. (*In re Sergio R.* (1991) 228 Cal.App.3d 588, 601-602 [279 Cal.Rptr. 149] [defendant and another fired 12-gauge shotguns into a crowd]; *People* v. *Corona* (1989) 213 Cal.App.3d 589, 593-594 [261 Cal.Rptr. 765] [defendant was one of a group that beat the victim].) This exception applies only when proof of the personally liable defendant is *impossible.* If the prosecution *could have* introduced evidence resolving the issue, but did not, the failure of proof does not justify imposition of the enhancement on all potentially culpable defendants. (*People* v. *Magana* (1993) 17 Cal.App.4th 1371, 1380-1381 [22 Cal.Rptr.2d 59].) The prosecution bears the burden of proving that either a defendant personally caused the great bodily injury or death of the victim, or it is impossible to determine which defendant caused the great bodily injury or death of the victim, and the defendant's conduct was of a nature that it could have caused the great bodily injury or death of the victim. (*Id.* at pp. 1378-1381.)

In this case, the record does not reflect an impossibility of proof, but only a failure of proof. While proof of which defendant fired the .380-caliber handgun may in fact have been impossible, no attempt was made to present evidence on this issue. As such, we cannot conclude that the failure of proof of identity of the shooter who personally caused the death justifies the imposition of the sentence enhancement on all three defendants. The prosecution has simply not met its burden of proof.

### C. *Penal Code Section 12022.5, Former Subdivision (a)*

Defendants concede that the Penal Code section 12022.5, former subdivision (a) enhancement, which provided for a term of three, four or five years for personal use of a firearm, is applicable to their conduct, and they request modification of the judgment to reflect sentences under this provision. Under the circumstances of this case, in which the trial court initially thought enhancements were to be imposed under Penal Code section 12022.5, subdivision (a)(1), we need not remand for resentencing, but can modify the judgment to reflect the intent of the trial court.

At Andrew's sentencing hearing, counsel suggested imposition of the middle term of four years on the "use" enhancement, under the impression Penal Code section 12022.5, former subdivision (a) applied. The trial court accepted the recommendation and imposed a four-year term "for the use of

the weapon."[17] At Steve's sentencing hearing, the trial court stated reasons for imposing the upper term "on the use of a weapon" and indicated its intent to impose a five-year enhancement. The minute order for Gutierrez's sentencing hearing indicates, "As to the [Penal Code section] 12022.5[, former subdivision (a)] allegation, the court selects the low[er] term of 3 years."[18] It is clear the trial court would impose those terms for the Penal Code section 12022.5, former subdivision (a) enhancements if we were to remand the matter for resentencing. Thus, remand is unnecessary.

The judgments will be modified to reflect the following enhancements under Penal Code section 12022.5, former subdivision (a) in lieu of the five-year enhancements under Penal Code section 12022.5, subdivision (b)(1): Andrew—four years,[19] Steve—five years, Gutierrez—three years.

V.-VIII.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

In case No. B088840, the judgments are modified to reflect the following enhancements under Penal Code section 12022.5, former subdivision (a) in lieu of the five-year enhancements under Penal Code section 12022.5, subdivision (b)(1): Andrew Gonzales—four years; Steve Gonzales—five years; Eddie Gutierrez—three years. Additionally, the judgment with respect to Andrew Gonzales is modified to reflect a total of 753 days presentence credit, consisting of 503 actual days and 250 days conduct credit. As modified, the judgments are affirmed.

In case No. B092486, the judgment is modified to vacate the award of presentence credit. As modified, the judgment is affirmed.

Turner, P. J., and Godoy Perez, J., concurred.

The petition of appellant Eddie Gutierrez for a rehearing was denied July 3, 1996, the petition of appellant Andrew James Gonzales for a rehearing was denied July 15, 1996, and the petitions of all appellants for review by the Supreme Court were denied September 25, 1996.

---

[17]The minute order, however, reflects the mandatory five-year enhancement under Penal Code section 12022.5, subdivision (b)(1).

[18]Both orders were amended nunc pro tunc to indicate a mandatory five-year term pursuant to Penal Code section 12022.5, subdivision (b)(1).

[19]Because we are modifying Andrew's sentence to reflect the four-year term contemplated at the sentencing hearing, we need not address his challenge to the discrepancy between the reporter's transcript and the minute order.

*See footnote, *ante*, page 804.